**Samuel Bartow STRANG, III, Plaintiff,**

v.

**Michael SATZ, as State Attorney for Broward County, Florida, Defendant.**

**No. 94–6686–CIV.**

United States District Court, S.D. Florida.

April 28, 1995.

Bruce Rogow, Beverly Pohl, Ft. Lauderdale, FL, for plaintiff.

Sarah Mayer, West Palm Beach, FL, for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon Plaintiff's Motion for Summary Judgment, filed on November 3, 1994. By order of this Court, Defendant filed a response on December 23, 1995. In its motion, Defendant also moved for summary judgment. On February 8, 1995, the Court held a hearing and heard oral argument on the cross-motions for summary judgment.

### I. Factual Background

■ Florida Statute § 817.567 prohibits one from claiming he holds an academic degree or title unless that degree or title has been conferred by an accredited institution. In Florida, Plaintiff has been holding himself out to the public as "Dr. Strang" and as an expert in the field of gerontology. Plaintiff holds a Ph.D. in neurobiology from Pacific Western University, which the parties agree is not an accredited institution under the terms of Fla.Stat. § 817.567.

### II. Legal Standard

Summary judgment is appropriate only where it is shown that no genuine dispute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In ruling on the moving party's motion, the court must view the evidence in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In so doing, the court "should 'resolve all reasonable doubts about the facts in favor of the non-movant' and draw 'all justifiable inferences ... in his favor.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (alteration in original) (citation omitted).

Initially, the moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (1993), *reh'g denied*, 16 F.3d 1233 (11th Cir.1994). To meet this burden, the non-moving party must go beyond the pleadings. If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the Court should refuse to grant summary judgment. *Id.* However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### III. Analysis

The facts as articulated above are not in dispute. The issues in dispute are legal in nature and thus are appropriate for summary disposition. Specifically, the issue is whether Florida Statute § 817.567 violates the First and Fourteenth Amendments of the United States Constitution.

### A. Florida Statute § 817.567

The statute makes it a first degree misdemeanor for one to make false claims of academic degree or title. The statute provides:

**Making false claims of academic degree or title**

(1) No person in the state may claim, either orally or in writing, to possess an academic degree, as defined in s. 246.021, or the title associated with said degree, unless the person has, in fact, been awarded said degree from an institution that is:

(a) Accredited by a regional or professional accrediting agency recognized by the United States Department of Education or the Council on Postsecondary Education;

(b) Provided, operated, and supported by a state government or any of its political

subdivisions or by the Federal Government;

(c) A school, institute, college or university chartered outside the United States, the academic degree from which has been validated by an accrediting agency approved by the United States Department of Education as equivalent to a baccalaureate or postbaccalaureate degree conferred by a regionally accredited college or university in the United States;

(d) Licensed by the State Board of Independent Colleges and Universities pursuant to ss. 246.011–246.151 or exempt from licensure pursuant to s. 246.085; or

(e) A religious seminary, institute, college or university which offers only educational programs that prepare students for a religious vocation, career, occupation, profession, or lifework, and the nomenclature of whose certificates, diplomas, or degrees clearly identifies the religious character of the educational program.

(2) No person awarded a doctorate degree from an institution not listed in subsection (1) shall claim in the state, either orally or in writing, the title "Dr." before the person's name or any mark, appellation, or series of letters, numbers or words, such as, but not limited to, "Ph.D," "Ed.D," "D.N.," or "D.Th," which signifies, purports, or is generally taken to signify satisfactory completion of the requirements of a doctorate degree, after the person's name.

(3)(a) A person who violates the provisions of subsection (1) or subsection (2) commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(b) In addition to any penalty imposed under paragraph (a), a violator shall be subject to any other penalty provided by law, including, but not limited to, suspension or revocation of the violator's license or certification to practice an occupation or profession.

Fla.Stat. § 817.567.

### B. Nature of Speech

■ The Court first examines the nature of the speech at issue. The United States Supreme Court has distinguished between non-commercial or "pure" speech and commercial speech. Pure speech is that in which society has an interest wholly apart from the speaker's or listener's economic interest. *Abramson v. Gonzalez,* 949 F.2d 1567, 1574 (11th Cir.1992). In contrast, commercial speech is that which proposes a commercial transaction. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

In comparison to pure speech, the Supreme Court affords commercial speech "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).

■ Plaintiff contends that the statute criminalizes non-commercial or "pure" speech as well as commercial speech and that the statute does not pass constitutional muster under the strict scrutiny test.[1] The Court finds that this argument is without merit. Dr. Strang holds himself out as an expert gerontologist, one who specializes in the social and health-related problems of the elderly. He is the Director of the Center for Gerontology in Fort Lauderdale, Florida. He has served as a consultant in elder care and testified as an expert witness. The Court thus finds that Plaintiff's use of the terms "Dr." and "Ph.D" constitutes commercial speech.

### C. Central Hudson Gas Analysis

■ The Supreme Court in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n* set forth a four-part test to determine whether a restriction on commercial speech is constitutionally valid. The four prongs are as follows: (1) the speech must be

---

**1.** A court applies heightened scrutiny to a statute that affects commercial speech and non-commercial expressive speech that are inextricably intertwined. *Riley v. National Federation of Blind North Carolina, Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).

truthful and concern lawful activity; (2) the government must have a substantial interest in restricting the speech; (3) the regulation must directly advance the asserted governmental interest; and (4) the regulation must be narrowly tailored[2] to serve the governmental purpose. 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). It is well-established that the "party seeking to uphold the restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane,* —— U.S. ——, ——, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993) (citing *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 2882 n. 20, 77 L.Ed.2d 469 (1983)).

### 1. *Is the speech truthful and does it concern lawful activity?*

■ Commercial speech must be truthful and must relate to lawful activity in order to receive protection under the First Amendment. The parties do not dispute the fact that the speech at issue is both truthful and concerns lawful activity. The speech is thus protected commercial speech.

### 2. *Is there a substantial government interest in restricting the speech?*

■ Defendant argues that Florida has a substantial interest in restricting the speech: protecting its citizens from unqualified and incompetent health care professionals. A state has broad police powers to regulate for the health and safety of its citizens. The Court thus finds that Florida's interest in protecting its citizens from unfit professionals is substantial.

### 3. *Does the regulation directly advance the asserted governmental interest?*

■ The third prong of the *Central Hudson Gas* test requires that a regulation impinging upon commercial expression "directly advance the state interest involved." *Central Hudson Gas,* 447 U.S. at 564, 100 S.Ct. at 2350. A regulation "may not be sustained if

it provides only ineffective or remote support for the government's purpose." *Id.* Moreover, the party "seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 2882 n. 20, 77 L.Ed.2d 469 (1983). Furthermore, this burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane,* —— U.S. ——, ——, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993) (citations omitted). Otherwise, a state "could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." *Id.*

■ Since disclosure of "truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information," *Peel v. Attorney Registration and Disciplinary Comm'n,* 496 U.S. 91, 108, 110 S.Ct. 2281, 2292, 110 L.Ed.2d 83 (1990), only false, deceptive or misleading commercial speech may be banned. *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985) (citation omitted). Thus, a state may enact a complete ban on commercial speech that is actually or inherently misleading. *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982). Nonetheless, even commercial speech that is not actually misleading still can be potentially misleading and this potentially misleading character can create a state interest sufficiently substantial to justify a categorical ban on its use. *Peel,* 496 U.S. at 100, 110 S.Ct. at 2287.

■ Defendant argues that Plaintiff's use of the title "Dr." is inherently misleading. A member of the public upon hearing or reading that Plaintiff holds a doctorate degree would assume that Plaintiff has completed a

---

**2.** In *Board of Trustees of State Univ. v. Fox,* the Supreme Court modified the fourth prong of the *Central Hudson Gas* analysis. The inquiry is whether the restriction is narrowly tailored to serve the governmental interest. Previously, the fourth prong examined whether the means were no more restrictive than necessary. 492 U.S. 469, 478, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989).

standardized course of study to obtain the degree when in fact Plaintiff has obtained the degree from an institution unrecognized by the State of Florida or by the federal government. Plaintiff contends that Defendant has failed to offer any factual or legal support for its position and further argues that under *Peel*, his use of the terms "Dr." and "Ph.D" is neither inherently nor potentially misleading.

The Court finds both positions to be without merit. In light of Fla.Stat. § 817.567, when the degree is from an institution unrecognized by the State of Florida, the Court finds that the use of "Dr." and "Ph.D" is potentially misleading.

Defendant's contention that the speech is actually or inherently misleading is unconvincing. Defendant confuses the speech itself ("I have a Ph.D") and the school that awarded the degree. The Court must examine the *speech* at issue to determine whether *it* is actually or potentially misleading. The statement "I have a Ph.D" in and of itself is not misleading. It *becomes* or *can be* misleading if the degree is from an institution outside the definition of the statute. For example, the statement "I have a Ph.D" is not misleading if the degree is from the University of Florida. However, the statement could be misleading if the degree were from Generic & Unaccredited University. Thus, the speech is, or can be, only potentially, not inherently, misleading.[3]

Plaintiff relies on *Peel* to argue that the speech is not potentially misleading, but such reliance is misplaced. In *Peel*, the Supreme Court examined an attorney's right to advertise his or her certification as a trial specialist. The Supreme Court concluded that certification is "simply a fact, albeit one with multiple predicates, from which a consumer *may or may not* draw an inference of the likely quality of an attorney's work in a given area of practice." *Peel*, 496 U.S. at 101, 110 S.Ct. at 2288 (emphasis added). In contrast,

"Ph.D" or "Dr." are not merely terms from which a listener could draw an inference of qualification. Rather, they are in and of themselves assertions of significant academic achievement. A Ph.D is one of the highest academic degrees conferred by a university and a "doctor" is one "who has earned the highest academic degree awarded by a college or university." *American Heritage Dictionary* 414 (2d ed. 1985). Use of these terms thus does more than give rise to an inference about the user's qualifications, it is a *declaration* of a very distinguished level of qualification.

In *Peel*, the Supreme Court also analyzed multiple predicates of certification and found that "[m]uch like a trademark, the strength of a certification is measured by the quality of the organization for which it stands." *Peel*, 496 U.S. at 102, 110 S.Ct. at 2288. A degree awarded by an institution that does not fall within the definition of Fla.Stat. § 817.567 is a qualification that is neither recognized nor sanctioned by either the State of Florida or the U.S. Department of Education. Without disclosure of the fact that the degree is from such an institution, the very nature of the terms "Ph.D" and "doctor" can operate to suggest such state or federal recognition.[4] Certainly one who holds himself out as a Ph.D or doctor in Florida is *not* trying to give the impression that he earned the degree from an institution neither recognized nor accredited by the State of Florida.

In light of the foregoing, the Court thus finds that use of the term "Ph.D" or "doctor" when the degree or title has been conferred by an institution outside the definition of Fla.Stat. § 817.567, even if a true statement, is potentially misleading. By prohibiting such statements, Florida Statute § 817.567 advances the state's interest of protecting its citizens in a direct and material way.

---

**3.** To the extent that this conclusion draws on the logical predicate that one who holds a doctorate degree has completed a standardized course of study at an accredited institution and is therefore qualified, Defendant's contention is correct. However, the relevant focus of the constitutional inquiry as to the nature of the speech still re-

mains on the speech itself. *See also, infra* note 3 and accompanying text.

**4.** Implicit is the assumption that there is a correlation between quality and governmental or agency accreditation.

4. *Is the regulation narrowly tailored to serve the governmental purpose?*

The last inquiry is whether there is a reasonable "fit" between the legislature's ends and the narrowly tailored means chosen to accomplish those ends. *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989). A state "may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive." *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982). A state may consider "requiring a disclaimer about the certifying organization or the standards of a specialty." *Peel*, 496 U.S. at 110, 110 S.Ct. at 2292.

Plaintiff argues that Fla.Stat. § 817.567 is not narrowly tailored to achieve the government's purpose. Without conceding that Plaintiff's statement that he has a Ph.D is potentially misleading, Plaintiff contends that the statute impermissibly imposes a complete ban on speech when narrower limitations would suffice.

As noted above, Fla.Stat. § 817.567 prohibits one from making false statements of degree or title by one who has no degree at all. *See Long v. State*, 622 So.2d 536, 538 (Fl. Dist.Ct.App.1993), *rev. denied*, 629 So.2d 133 (Fla.1993). The statute also proscribes holding oneself out to the public as a "Ph.D" or doctor, which nonetheless may be a true statement, unless the person holds a degree from a statutorily-recognized institution. Having found that this speech is potentially misleading, the relevant constitutional inquiry is whether this information can be presented in a way that is not misleading or deceptive.

Florida Statute § 817.567 operates as an absolute prohibition on potentially misleading but truthful speech. However, narrower limitations such as a disclosure requirement[5] would allow the speech and ensure that it is presented in a non-misleading manner. *Peel*, 496 U.S. 91, 110, 110 S.Ct. 2281, 2292 (1990); *Ibanez v. Florida Dep't of Business & Pro-*

*fessional Regulation,* —— U.S. ——, ——, 114 S.Ct. 2084, 2093, 129 L.Ed.2d 118 (1994). Disclosure that a person's Ph.D or claim of title such as "doctor" is from an institution unrecognized by the State of Florida or by the Federal Government would be more likely to make a positive contribution to and to aid in decisionmaking than concealment of such information. *See Peel*, 496 U.S. at 108, 110 S.Ct. at 2291.

Requiring such disclosure thus would serve the government's substantial interest in protecting Floridians who may rely on the titles of "Dr." and "Ph.D" when they seek services. Such disclosure also would ensure First Amendment protection to truthful, albeit potentially misleading, commercial speech. The Court thus concludes that Fla.Stat. § 817.567 is not narrowly tailored to serve the governmental purpose.

### D. Due Process Analysis

Having found that Fla.Stat. § 817.567 violates the First Amendment because it is not narrowly tailored to achieve a substantial government interest, the Court need not reach the Fourteenth Amendment due process claim.

### IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiff's Motion for Summary Judgment be, and the same is hereby, GRANTED. It is

FURTHER ORDERED and ADJUDGED that Florida Statute § 817.567 be, and the same is hereby DECLARED unconstitutional and violative of the First Amendment of the United States Constitution. It is

FURTHER ORDERED and ADJUDGED that Defendant Michael J. Satz as State Attorney for Broward County, Florida be, and the same is hereby, PERMANENTLY ENJOINED from enforcing the provisions of Fla.Stat. § 817.567 against Plaintiff Samuel

---

**5.** This is analogous to disclosures on attorneys' letterhead and business cards that indicate where they are admitted to practice.

Bartow Strang III. The Court shall retain jurisdiction to hear motions for fees and costs pursuant to 42 U.S.C. § 1988.

DONE and ORDERED.