The Honorable Terry Rice State Representative Post Office Box 195 Waldron, Arkansas 72958-2195
Dear Representative Rice:
I am writing in response to your request for my opinion on the following questions:
 1. Pursuant to A.C.A. 17-102-104, the profession of Acupuncture or Oriental Medicine is denied the use of the titles doctor, physician and Oriental medicine. Does this statute violate the First Amendment of the U.S. Constitution as set forth in the federal case, Strang v. Satz, 884 F.Supp. 504 (S.D. Fla. 1995)?
 2. In Arkansas, diverse branches of the healing arts are allowed use of the terms "doctor," "physician," and "medicine" in relation to their professions. Does A.C.A. 17-102-104 violate the Fourteenth Amendment of the U.S. Constitution as it prohibits the profession of Acupuncture and Oriental medicine from using the terms, "doctor," "physician," and "Oriental medicine" in relation to their profession?
RESPONSE
In my opinion, the answer to your first question is "no." As discussed below, I believe the recited case and applicable Supreme Court precedent suggest only that an individual has aFirst Amendment right to express the details of his professional background. I do not believe, however, this right extends to practicing his profession using a title that the legislature has reasonably prohibited him from *Page 2 
using. I believe the answer to your second question is likewise "no." You appear to be asking whether the statutory proscription against an acupuncturist using any of these various titles offends the equal protection clause of the Fourteenth Amendment. For reasons stated below, I do not believe it does.
Question 1: Pursuant to A.C.A. 17-102-104, the profession ofAcupuncture or Oriental Medicine is denied the use of thetitles doctor, physician and Oriental medicine. Does this statute violatethe First Amendment of the U.S. Constitution as set forth in thefederal case, Strang v. Satz, 884 F.Supp. 504 (S.D. Fla. 1995)?
In my opinion, the answer to this question, which essentially restates the questions posed in Op. Att'y Gen. No. 2010-137, is "no."
In Strang, a federal district court considered the constitutionality of a Florida statute prohibiting the holder of a Ph.D. in neurobiology issued by a university unaccredited in that state from using the title "Doctor" or "Ph.D." in conjunction with his activities as a gerontologist. The court addressed the issue as being whether the use of that title constituted "commercial speech" under the relevant constitutional standard.[1] The court concluded that the Florida statute constituted "an absolute prohibition on potentially misleading but truthful speech."[2] In concluding that the statute was not sufficiently narrowly tailored to avoid possible deception, the court observed:
 However, narrower limits, such as a disclosure requirement would allow the speech and ensure that it is presented in a non-misleading manner. [Citations omitted.] Disclosure that a person's Ph.D, or claim of title such as "doctor" is from an institution unrecognized by the State of Florida or by the Federal Government would be more likely to make a positive contribution to and to aid in decisionmaking than concealment of such information.[3] *Page 3 
The court in Strang relied upon the United States Supreme Court's decision in Peel v. Attorney Disciplinary Commission ofIllinois, 496 U.S. 91 (1990), in which the Supreme Court held that an attorney's identification of himself on his letterhead as a certified legal specialist could not be barred based on a restriction under the state's code of professional conduct against such certification programs. Based upon the Court's reasoning inPeel, the Strang court concluded that, in order to inform the public of a state-law restriction on licensing or certification, "[a] state may consider `requiring a disclaimer about the certifying organizations or the standards of a specialty.' Peel,496 U.S. at 110. . . ."[4]
Nevertheless, the court in Strang distinguished Peel as follows:
 Plaintiff relies on Peel to argue that the speech is not potentially misleading, but such reliance is misplaced. In Peel, the Supreme Court examined an attorney's right to advertise his or her certification as a trial specialist. The Supreme Court concluded that certification is "simply a fact, albeit one with multiple predicates, from which a consumer may or may not draw an inference of the likely quality of an attorney's work in a given area of practice." Peel, 496 U.S, at 101 . . . (emphasis added). In contrast, "Ph.D" or "Dr." are [sic] not merely terms from which a listener could draw an inference of qualification. Rather, they are in and of themselves assertions of significant academic achievement. A Ph.D is one of the highest academic degrees conferred by a university and a "doctor" is one "who has earned the highest academic degree awarded by a college or university." American Heritage Dictionary 414 (2d ed. 198). Use of these terms thus does more than give rise to an inference about the user's qualifications, it is a declaration of a very distinguished level of qualification.[5]
The court in Strang thus concluded that the use of the title "doctor" is qualitatively different from a claim of certification in a specialty, which was at issue in Peel. Without addressing whether having a doctoral degree is more of a "fact" than having a "certification as a trial specialist," I will merely note the court's *Page 4 
acknowledgement of the significance to the public of a title like "doctor." This designation is a matter of state law, [6] and it does not bear elaborate discussion to support the proposition that the state may set the criteria for licensure using that title. As discussed in my previous opinion, an acupuncturist is licensed as precisely that — an acupuncturist — not as a medical doctor, and the fact that the institution that educated him certified him a "doctor" does not mean that he can practice under that appellation under Arkansas law. The legislature has apparently determined that the practice of acupuncture is distinct from the practice of medicine, and, in a reasonable effort to avoid confusion in the public, it has consequently foreclosed acupuncturists from using that title. Nothing in either Peel or Strang supports a contrary conclusion. Both cases stand only for the proposition that while one has a First Amendment right to proclaim his educational background, the state likewise has the right to determine whether that background will be recognized in the practice of a particular profession. Both cases are fully consistent with the conclusion that while an individual has a right to declare, for instance, that he has a doctoral degree, he also has an obligation in the course of his practice to acknowledge that that degree is not recognized in the state where he practices.
Peel, which is the only case recited that constitutes binding precedent in Arkansas, merely declared that letterhead announcing the fact of a professional certification was permissible under theFirst Amendment if the information conveyed was "not actually or inherently misleading."[7] With respect to your question, the clear issue is whether it would be "actually or inherently misleading" for an individual to conduct a professional practice using a title that state law has expressly dictated the practitioner may not use.[8] The clear answer to this question is "yes." Accordingly, an acupuncturist who holds a degree as a "doctor of healing arts" might under the First Amendment communicate that he has a degree designating himself as such, but he cannot represent that he is a "doctor" under Arkansas law, and he could presumably be subject to disciplinary action for doing so. Simply put, an individual enjoys no constitutional right to practice his profession using a title that he is expressly foreclosed from claiming under a reasonable state law.[9] *Page 5 
Any such use would be patently misleading and consequently not subject to First Amendment protection as commercial speech.[10] I am consequently not inclined to opine that the statute at issue is unconstitutional, although, as I noted in my previous opinion, which I will not reproduce here, I believe the statute would benefit from legislative or judicial clarification.
Question 2: In Arkansas, diverse branches of the healingarts are allowed use of the terms "doctor," "physician," and "medicine"in relation to their professions. Does A.C.A. 17-102-104 violate theFourteenth Amendment of the U.S. Constitution as it prohibits theprofession of Acupuncture and Oriental medicine from using theterms, "doctor," "physician," and "Oriental medicine" in relation totheir profession?
I take your question to be whether the equal protection clause of the Fourteenth Amendment bars the state from denying acupuncturists and other practitioners of oriental healing the titles referenced in your request.[11] In my opinion, subject to the qualifications discussed in my response to your previous question, the answer to this question is "no."
The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end. Vacco v.Quill, 521 U.S. 793 (1997); Romer v. Evans,517 U.S. 620, 631 (1996); Clements v. Fashing,457 U.S. 957 (1982); Craft v. City of Fort Smith,335 Ark. 417, 984 S.W.2d 22 (1998); Medlock v. Leathers,311 Ark. 175, 842 S.W.2d 428 (1992), reh. denied, 1993;McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989); *Page 6 Streight v. Ragland, 280 Ark. 206, 655 S.W.2d 459 (1983);City of Piggott v. Woodard,261 Ark. 406, 549 S.W.2d 278 (1977).
In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Ester v. National Home Ctrs.,Inc., 335 Ark. 356, 981 S.W.2d 91 (1998); Reed v. Glover,319 Ark. 16, 889 S.W.2d 729 (1994); Arkansas HospitalAssoc. v. State Board of Pharmacy,297 Ark. 454, 763 S.W.2d 73 (1989).
As discussed at length in my previous opinion, in the present case, the legislature has chosen to designate acupuncturists as practitioners who may not identify themselves in their professional practice as doctors or physicians. The question, then, is whether any reasonable basis might exist for the legislature imposing this restriction. In my opinion, the answer to this question is "yes." By statute and in common parlance, the terms "doctor" and "physician" apply to individuals who have undertaken a long and rigorous education in medical or dental arts — disciplines whose ranges differ from that of acupuncture. Without presuming to opine on the educational requirements for, or the medical efficacy of, acupuncture, I will simply opine that the legislature may reasonably have concluded that the use of these titles should be restricted to individuals who have qualified for the designations under the intensive standards established by statute and professional regulation. In short, subject to the provisos discussed above, I do not believe that the legislature is restricted in its prerogatives from controlling how professionals characterize themselves in their respective practices.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh
[1] That standard, as set forth in Central HudsonGas Elec. Corp v. Public Service Comm'n,447 U.S. 557-566 (1980) and modified in Board of Trustees of StateUniv. of N.Y. v. Fox, 492 U.S. 469, 478 (1989), has four prongs: (1) the speech must be truthful and involve lawful activity; (2) the government must have a substantial interest in restricting the speech; (3) the regulation must directly advance the asserted governmental interest; and (4) the regulation must be narrowly tailored to serve the governmental purpose.
[2] 884 F.Supp. at 510.
[3] Id.
[4] Id.
[5] Id. at 509 (final emphasis in original).
[6] The requirements for licensure and for such conditions as reciprocity are set forth in chapter 95 of title 17 of the Arkansas Code.
[7] 496 U.S. at 110-11.
[8] A.C.A. § 17-102-104(c) (Repl. 2010).
[9] On the issue of reasonability, see my response to question 2, infra.
[10] See note 1, supra.
[11] The doctrine of "equal protection" is set forth not only in the Fourteenth Amendment to the United States Constitution
(the direct focus of your question) but also in article 2, §§ 2 and 3 of the Arkansas Constitution.