The CITY OF PIGGOTT, Arkansas *v.*
Orley WOODARD

76-372                                                    549 S.W. 2d 278

Opinion delivered April 11, 1977
(In Banc)
[Rehearing denied May 16, 1977.]

*Gus R. Camp,* City Atty., for appellant.

*Lee Ward,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Orley Woodard, a policeman of the City of Piggott from February 4, 1969, until May 27, 1976, upon retirement, claimed pay for holidays during his service on the force (Ark. Stats. Ann. 19-1713) and also claimed the maximum accumulation of "sick leave," a total of 60 days' pay at the rate in effect during his service on the force (Ark. Stats. Ann. 19-1720 [1975 Supp.]). The circuit court found the plaintiff entitled to accumulated sick leave and entitled to pay for 68 holidays, totaling $2,772.74. The judgment has been stayed pending appeal.

For reversal, appellant first contends that there has been an illegal appropriation of city funds by the Legislature. A heterogeneous mixture concerning defects in the Legislative Act and other alleged reasons for reversal are mentioned under point two.

The first point relates to an assertion that the acts in question are violative of Article 5, § 29 of the Arkansas Constitution. That provision provides:

"No money shall be drawn from the treasury except in

pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years."

This provision is not pertinent. The language "No money shall be drawn from the treasury" has reference to the state treasury and does not refer to money held elsewhere. See *Gipson v. Ingram*, 215 Ark. 812, 223 S.W. 2d 595.

Nor do we find merit in the arguments under point two. This case was tried entirely on a stipulation which only included three paragraphs, first, the dates of Woodard's employment as previously set out in this opinion, second, the amount of accumulated unpaid sick leave time, also previously mentioned, and third, the number of holidays during each pay rate, including the period of time for which each rate was applicable.

The city contends that it has never adopted an ordinance providing for special pay and it asserts that such an ordinance is mandatory before Woodard can be paid. We do not agree. If this were the case, a city could vitiate a legislative act through inaction.

In *Mackey v. McDonald*, 255 Ark. 978, 504 S.W. 2d 726, and cases cited therein, we pointed out that whenever an obligation is legally imposed upon a county by legislative enactment within the power of the General Assembly, it must be paid without regard to the existence or exhaustion of a specific appropriation so long as the county general fund is not exhausted. While that case involved the obligation of counties, the same logic holds true as to the obligation of cities. In 56 Am. Jur. 2d *Municipal Corporations* § 132, it is stated that the state may provide a metropolitan police system for municipalities and compel them to pay the expenses thereof, even though the municipality acts under a home-rule charter, such charter being subservient to the general laws. As has been pointed out so many times that no citation of authority is necessary, municipalities only have such authority as is given by the General Assembly. The act

in question is a general law and Article 12, § 4 of the Arkansas Constitution prohibits a municipal corporation from passing any law contrary to the general laws of the state. To say that a city could nullify a general act by simply refusing to pass an ordinance or make an appropriation would, in actual effect, be the same as passing a law contrary to such statute.

It is argued that the legislation is unconstitutional in light of Article 2, § 18 of the Arkansas Constitution which provides:

"The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens."

It is asserted that the Legislature has singled out certain type employees for special privileges, such privileges not being afforded to all employees of the city.

This is not the test. In 16A C.J.S. *Constitutional Law* § 505, the subject is discussed as follows:

"State and municipal legislation is subject to the constitutional requirement that no state shall deny the equal protection of the laws to any person within its jurisdiction; and it is valid as complying with, or invalid as violating, this requirement accordingly as it does or does not, within the sphere of its operation, affect and treat alike, with equality and uniformity, and without arbitrary or unreasonable distinction or discrimination, all persons similarly situated. Legislation which meets this test satisfactorily is not invalid because it is not all-embracing but instead is limited, for example, * * * as to persons, subjects, objects to which the legislation is to be applied, or evils or abuses to be remedied or corrected.

Equal protection is not achieved through indiscriminate imposition of inequalities, but discrimination alone, irrespective of its basis or effect, is not the test of denial of equal protection of the laws by a statute. A discrimination which is merely technical and in no sense substantial or unjust does not render a statute void.

Also, the constitutional requirement does not prevent a state or municipality from adjusting its legislation to differences in situations and making a discrimination or distinction in its legislation in respect of things that are different, provided the discrimination or distinction has a reasonable foundation or rational basis and is not palpably, purely, and entirely arbitrary in the legislative sense, that is, outside of the wide discretion which the legislative body may exercise. The courts will not lightly assume legislative arbitrariness, nor will they draw the dividing line between rational and arbitrary legislation with a view of remote possibilities, but instead they will refuse to set aside a statutory discrimination as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it."

Our own cases are fully in accord. In *Thompson* v. *Continental Southern Lines, Inc., et al,* 222 Ark. 108, 257 S.W. 2d 375, this court held that when classification of subjects is made by legislation, such classification must rest on some substantial difference between classes created and others to which it does not apply, but where the statute or ordinance appears to be founded upon a reasonable basis and operates uniformly upon a class to which it applies, it cannot be said to be arbitrary. See also the early case of *Willis, et al* v. *City of Fort Smith, et al,* 121 Ark. 606, 182 S.W. 275.

In the first place, the legislative act (Act 133 of 1955) granting the additional pay for holidays applies to all policemen and Act 393 of 1969 provides that "All firefighters and police officers employed in cities of the first and second class shall accumulate sick leave," etc.[1] So it is at once apparent that there is no discrimination as between the members of the class — *all* city policemen are included. It must be remembered that because of the nature of their duties, policemen are required to work on holidays, or, at least are subject to call, for the public cannot be left without police protection. This situation is vastly different from that of a secretary or a clerk, other office help, or sanitation workers, as there could but rarely be occasion for the services

---

[1]A similar right to holiday pay was given to firemen in Act 132 of 1955 as amended by Act 264 of 1957.

of these personnel on a holiday. Sick leave is controlled by Act 393 of 1969 (Ark. Stats. Ann. 19-1720) which provides for unused accumulated sick leave for policemen and firemen. The act points out that existing provisions for sick leave are not uniform, and are entirely inadequate. We think, under our decisions, these classifications are entirely reasonable, and appellant's argument is found to be without merit.

Appellant calls attention specifically to Article 12, § 4 of the Constitution of the State of Arkansas, as amended by Amendment 10 to the Constitution and says:

> "Realizing, of course, that cities only have such powers as may be given by the General Assembly, either express or implied, Article 12, Section 4 of the Constitution of the State of Arkansas specifically limits the Appellant herein from levying a tax or more than 5 mills and, also, specifically prohibits the Appellant from paying or issuing any type certificate of indebtedness in excess of the revenues from all sources for the current fiscal year. At the time of the trial of this case there was no way of knowing whether or not payment of this judgment would, by making such payment, put the Appellant in the position of exceeding its revenues from all sources for the current fiscal year."

There is absolutely nothing in the record to denote whether the allowance of appellee's claim would necessarily cause the revenues of appellant for any year or years to be exceeded. We have said:

> "The burden of showing that payment of an obligation would constitute a violation of this amendment is upon the party making that assertion if a question of fact is involved." *Deason v. City of Rogers*, 247 Ark. 1061, 449 S.W. 2d 410.

In the same case, this court commented:

> "There is no way that this court or the circuit court could possibly ascertain, on the record, what the revenues or expenditures of the city amounted to in the

year or years involved, what disposition may have been made of any surplus in any such year, or what other claims against any surplus might be outstanding."

Whether the statutes (19-1713 and 19-1720) are constitutional and thus valid, and we so find,[2] is entirely a separate question from whether revenues are available to pay the judgment. Of course, such judgment cannot be paid if violative of Amendment 10, and though there is much law on the subject, that matter is not presently before us.

Affirmed.

[2]The *Deason* case also involved the question of the holiday pay for policemen, but the constitutionality of the statute was not attacked.