Geraldine Faye REED *v.* Wanda Bookout GLOVER

94-464                                      889 S.W.2d 729

Supreme Court of Arkansas
Opinion delivered December 12, 1994

*Henry & Henry*, for appellant.

*Kenneth G. Fuchs*, for appellee.

DAVID NEWBERN, Justice. Geraldine Faye Reed, the appellant, is the mother of Wanda Bookout Glover, the appellee. Ms. Glover is the mother of Cody Shewmake, who was aged three

when this case began in 1993. Ms. Glover and Mark Shewmake lived together but did not marry. There is no question, and he acknowledges the fact, that Mark Shewmake is the father of Cody Shewmake, although there has been no legal determination of paternity. Cody Shewmake is in the custody of Ms. Glover who will not allow Ms. Reed to visit him.

Ms. Reed sought visitation. The Chancellor denied her request, and she appeals. The Chancellor's order stated that the conditions of Ark. Code Ann. § 9-13-103(a) (Repl. 1991), the statute granting visitation rights to grandparents in certain circumstances, had not been met and that Ms. Reed's contention that the statute is unconstitutional was denied. Ms. Reed then moved to vacate the order, contending that in *Rudolph* v. *Floyd*, 309 Ark. 514 832 S.W.2d 219 (1992), we had interpreted the statute in such a way as to allow a grandparent visitation rights in circumstances such as those now before us. The motion was denied.

In her appeal, Ms. Reed argues the Chancellor erred in holding that the statute does not permit visitation rights to be accorded to her and, alternatively, that the statute is unconstitutional. We decline to address the constitutional issue fully because we have been given no authority or convincing argument demonstrating that it lacks a rational basis.

We affirm the Chancellor and hold that, absent a statutory provision granting it, a grandparent has no right of visitation with a grandchild.

Shortly after Cody Shewmake was born in 1989, Ms. Glover pleaded guilty to federal charges of conspiracy to handle crystal methamphetamine. She was sentenced to three months in a halfway house and three-and-a-half years probation. Ms. Reed and her husband agreed to take custody of the child during that time. After Ms. Glover's release, Ms. Reed continued to care for the child while Ms. Glover was working. When Ms. Glover ended her relationship with Mr. Shewmake in 1992, she and the child moved in with the Reeds. Thereafter, they lived in a trailer parked on land belonging to the Reeds, and Ms. Reed continued to care for the child while Ms. Glover was away at work or on vacation.

In 1993, Ms. Glover and the Reeds argued, and Ms. Glover

has, since that time, denied Ms. Reed any opportunity to see or visit with Cody Shewmake.

### 1. The statute

At common law, a grandparent could not maintain an action for visitation rights to a grandchild except as a party to a custody proceeding. *See Quarles* v. *French*, 272 Ark. 51, 611 S.W.2d 757 (1981). Grandparents' rights with respect to their grandchildren must be derived from statutes or conferred by a court of competent jurisdiction pursuant to statutes. *Cox* v. *Stayton*, 273 Ark. 298, 619 S.W.2d 617 (1981).

In pertinent part, § 9-13-103(a)(1) provides as follows:

> Upon petition by a person properly before it, a chancery court of this state may grant grandparents . . . reasonable visitation rights with respect to their grandchild or grandchildren . . . at any time if the marital relationship between the parents of the child has been severed by death, divorce, or legal separation or if the child is in the custody or under the guardianship of a person other than one (1) or both of his natural or adoptive parents.

The plain language of the statute thus limits its operation to cases in which a "marital relationship between the parents of the child has been severed . . . or if the child is in the custody or under the guardianship of a person other than one (1) or both of his natural or adoptive parents." Neither of those situations exists in this case, so on its face, the statute is of no benefit to Ms. Reed's claim.

### 2. The Rudolph case

Ms. Reed argues that a grandparent's right to visit her grandchild should exist despite the lack of an underlying marital relationship between the child's parents. In essence, she asserts that the decision in the *Rudolph* case reflects this Court's recognition that a grandparent's rights are derived from the parental rights of his or her child and the only condition to be fulfilled before a grandparent can invoke those rights is the establishment of the grandparent's child's maternity or paternity of the child.

In the *Rudolph* case, the father of an unborn child conceived out of wedlock filed a paternity petition in a chancery court. He

requested custody of the child and, in the alternative, visitation. His parents, the Floyds, joined in the petition, seeking grandparental visitation rights. The Court entered an order establishing paternity of Brandon Floyd and granting visitation to Arthur Floyd as grandfather, to be exercised concurrently with Brandon Floyd until the child reached age six. The child's mother and her parents, who were also parties, appealed, arguing that there was no statutory authority to award visitation rights to grandparents of children born out of wedlock.

We affirmed the order of the Chancellor, holding statutory authority for granting visitation rights to grandparents in these situations existed, based upon Ark. Code Ann. §§ 9-13-103(a) and 9-10-109(a) (Repl. 1993). Section 9-10-109(a) provides:

> Subsequent to the finding by the chancery court that the defendant is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the chancery court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support costs and attorneys' fees, and directing payments through the clerk of the court.

We thus held that when there is a finding of paternity and a petition requesting grandparent visitation, the Chancellor had authority to grant visitation to the grandfather of the unborn child. The decision was based on statutory authority and not on the rights of a grandparent as derived from the parental rights of their children.

Ms. Reed notes that in our opinion in the *Rudolph* case we quoted with approval a passage from C. Brummer and E. Looney, *Grandparent Rights in Custody, Adoption, and Visitation Cases*, 39 Ark. L. Rev. 259 (1985), suggesting that a grandparent's rights with respect to a grandchild may result from the maternity of the child as well as paternity. The essence of the language cited from the law review article is in these words, "because grandparents' rights are only derivative, they may be contingent upon the establishment of paternity or maternity and are subject to divestment when parental rights are terminated." Our quotation of that lan-

guage did nothing to undermine the basis of our decision in the *Rudolph* case which was purely statutory.

As there was no showing of statutory authority for the establishment of the right of visitation, the Chancellor did not err.

### 3. Constitutional arguments

Ms. Reed contends the Chancellor erred in finding that § 9-13-103 is not unconstitutional as a violation of both the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution. She has failed, however, to cite any authority to support those contentions.

On review, this Court must presume a statute is constitutional, and the attacking party has the burden of proving otherwise. *Citizens Bank* v. *Estate of PettyJohn*, 282 Ark. 222, 667 S.W.2d 657 (1984). All doubts are resolved in favor of constitutionality. Where a constitutional construction is possible, we uphold the statute. *Hamilton* v. *Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994).

### a. Equal protection

As to equal protection, Ms. Reed asserts that an impermissible classification exists between the grandparents of legitimate children and the grandparents of illegitimate children. The Equal Protection Clause permits classifications that have a rational basis and are reasonably related to a legitimate government purpose. *Hamilton* v. *Hamilton, supra.* In determining whether a rational basis for a classification exists, we engage in the following analysis:

> On an equal protection challenge to a statute, it is not our role to discover the actual basis for the legislation. Instead we are merely to consider whether any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives, so that the legislation is not the product of utterly arbitrary and capricious government purpose and void on any hint of deliberate and lawful purpose. *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Further, the party challenging the legislation has the burden of proving that the act is not rationally

related to achieving *any* legitimate objective of state government under any reasonably conceivable state of facts.

To meet her burden, Ms. Reed must show that the classification between grandparents of legitimate children and grandparents of illegitimate children is arbitrary and capricious, for which there is no legitimate government purpose.

■ It cannot be said that Ark. Code Ann. § 9-13-103(a) is completely devoid of a legitimate purpose. At one point in its evolution, this statute provided grandparents with the right to seek visitation regardless of the marital status of the parents. However, the General Assembly later added the conditions involving the severance of marriage in order to avoid bestowing upon grandparents rights greater than those given to parents. *See* C. Brummer and E. Looney, *supra*, at p. 273. Additionally, we can understand well how the General Assembly might have wished to leave such domestic matters out of the arena of litigation unless the child of the grandparent died or the need for it had arisen in a related but separate context such as divorce or paternity proceedings. At any rate, we have been given no authority or convincing argument showing that there is no rational basis for the classification suggested.

### b. Due process

Ms. Reed asserts that her due process rights were violated because her right to see her grandchild was taken away without a hearing. That argument necessarily assumes she has a legal right to visit her grandson that has been taken away without an opportunity to be heard. The argument also has no merit.

■ Before we may apply the tests attendant upon a claim of a due process violation, there must be a showing of some right or interest which is protected by the Constitution. *Cox* v. *Stayton, supra*. As already established, any rights existing in grandparents must be derived from statutes or conferred by a court of competent jurisdiction pursuant to statutes. As there is no statute that supports Ms. Reed's right to visit her grandson, it cannot be said that she had a constitutionally protected interest that would afford her the right to a hearing.

Affirmed.