The Honorable Ed Wilkinson State Representative P.O. Box 610 Greenwood, AR 72936-0610
Dear Representative Wilkinson:
You have requested an Attorney General opinion concerning Act 592 of 1999,[1] which amends certain sections of the statutes that govern hearing instrument dispensers.
Your questions are the following:
 (1) Regarding Section 1(7) of Act 592 of 1999, is it constitutional to regulate businesses outside the state of Arkansas and set their hours of business?
 (2) Regarding Section 1(10), is it constitutional to treat these businesses separately than treating others who acquire their instruments out of state, since the Federal Drug Administration regulates manufacturers of hearing instruments?
 (3) Regarding Section 3(a)(4), is the language pertaining to" in-office assembler" constitutional?
 (4) Regarding Section 3(b), why is giving an instruction booklet required only for "in-office" assembled hearing instruments and not for all instruments
 (5) Regarding Section 9(3), is it constitutional to require license holders seeking renewal of their license to state that they are engaged in the practice of dispensing "in-office' assembled hearing instruments?
RESPONSE
Question 1 — Regarding Section 1(7) of Act 592 of 1999, is itconstitutional to regulate businesses outside the state of Arkansas andset their hours of business?
It is my opinion that the manner in which Act 592 of 1999 affects businesses located outside the state of Arkansas does not present constitutional problems.
The section of the act to which you refer amends the statutory definition of "established place of business" as set forth in A.C.A. § 17-84-101, the "Definitions" section of the statutes that govern hearing instrument dispensers. The new definition states:
 `Established place of business' means a place of business at a permanent address in the State of Arkansas or, if outside the state, within seventy-five (75) miles of the Arkansas state line which is open to the public during normal business hours at least thirty-five (35) hours per week[.]
A.C.A. § 17-84-101(7), as amended by Act 592 of 1999.
The only sections of Act 592 that affect businesses located outside the state of Arkansas (by using the phrase "established place of business" substantively) are Section 3 (amending A.C.A. § 17-84-104) and Section 12 (amending A.C.A. § 17-84-309). Both of these sections apply to and regulate persons who practice the dispensing of hearing instruments under the authority of a license granted by the Board (i.e., "dispensers).
More specifically, the pertinent part of A.C.A. § 17-84-104 states:
 Whether supplied by the dispenser or at the dispenser's order or direction, any person who practices the dispensing of hearing instruments shall deliver to each person supplied with a hearing instrument a bill of sale or comparable document containing the following:
(1) The dispenser's signature;
 (2) The address and telephone number of the dispenser's established place of business;
(3) The number of the dispenser's license;
 (4) A description of the make, model, and condition of the hearing instrument stating whether it is new, used, rebuilt, or in-office assembled, identifying the manufacturer, rebuilder, or in-office assembler, together with a description of any warranties covering the instrument; and
(5) The amount charged.
A.C.A. § 17-84-104, as amended by Act 592 of 1999 (emphasis added). This section clearly sets forth certain requirements for dispensers who are licensed by the state of Arkansas.
The pertinent part of A.C.A. § 17-84-309 states:
 (a) Every person who holds a license or internship shall notify the board in writing of the address of his or her established place of business and all satellite locations.
 (b) Any notice required to be given by the board to a person may be given by mailing it to him or her at the address of his or her established place of business.
 (c) It shall be the responsibility of every person who holds a license or internship to notify the board, by certified letter, of every change in his or her established place of business and all satellite locations within ten (10) days of such change.
A.C.A. § 17-84-309, as amended by Act 592 of 1999. This section also clearly applied only to Arkansas-licensed dispensers or persons who have applied to and are in the process of becoming licensed by the state of Arkansas.
Because both of the above-quoted substantive uses of the phrase "established place of business" occur in provisions that apply only to Arkansas-licensed dispensers (or to persons seeking to be licensed in the state of Arkansas), they therefore have the effect of regulating only persons who have voluntarily submitted to regulation by the state of Arkansas. The fact that these persons may operate businesses located outside the state of Arkansas does not change the fact that they have asked to be licensed by the state of Arkansas, and are therefore subject to the laws of the state of Arkansas that govern persons whom the state has licensed.
There are therefore no constitutional problems with these provisions.
You specifically inquired about the constitutionality of the state of Arkansas setting these businesses' hours of business. Act 592 does not seek to set hours of business for any dispenser. Rather, it simply states a number of hours of business for the purposes of defining which businesses fall within the statutory definition of "established place of business."
Question 2 — Regarding Section 1(10), is it constitutional to treat thesebusinesses separately than treating others who acquire their instrumentsout of state, since the Federal Drug Administration regulatesmanufacturers of hearing instruments?
The "Section 1(10)" to which your question refers defines the phrase "in-office assembled hearing instruments." It is my opinion that the references in Act 592 of 1999 to "in-office assembled hearing instruments" do not create constitutional problems.
The section to which your question refers is again the "Definitions" section of the statutes governing hearing instrument dispensers. Act 592 of 1999 added a definition of "in-office assembled hearing instrument," which states:
 (10) `In-office assembled hearing instrument' means an instrument built by the hearing instrument dispenser, or under his supervision, from components, including a pre-manufactured faceplate and a shell made by the dispenser or made under his supervision.
A.C.A. § 17-84-101(10), as amended by Act 592 of 1999.
The phrase "in-office assembled hearing instrument," and its grammatical derivatives, are used substantively only in A.C.A. § 17-84-104. That section states in pertinent part:
 (a) Whether supplied by the dispenser or at the dispenser's order or direction, any person who practices the dispensing of hearing instruments shall deliver to each person supplied with a hearing instrument a bill of sale or comparable document containing the following:
* * *
 (4) A description of the make, model, and condition of the hearing instrument stating whether it is new, used, rebuilt, or in-office assembled, identifying the manufacturer, rebuilder, or in-office assembler, together with a description of any warranties covering the instrument[.]
 (b) Additionally, the dispenser of an in-office assembled hearing instrument shall deliver to the person supplied with the in-office assembled hearing instrument an instruction booklet for the instrument.
A.C.A. § 17-84-104, as amended by Act 592 of 1999 (emphasis added).
The only provision quoted above that purports to differentiate between dispensers of in-office assembled hearing instruments and dispensers of other instruments is Section 4(b), which requires that dispensers of in-office assembled hearing instruments provide an instruction booklet for the instrument. It is my opinion that this differentiation does not create constitutional problems. Although you have not specifically identified the constitutional problem about which you are concerned, I presume that you are concerned about "equal protection" problems.
The constitutional doctrine of equal protection (which arises out of theFourteenth Amendment of the United States Constitution) prohibits certain types of "classifications." (A classification is the disparate treatment of those who are similarly situated.) However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification (i.e., a disparity) that does not involve a protected class, it is necessary to show that the disparity is arbitrary. That is, the disparity must be shown to have no rational basis. United States R.R. RetirementBd. v. Fritz, 449 U.S. 166 (1980); Hall v. Board of Trustees of Ark.Pub. Retirement Sys., 671 F.2d 269 (8th Cir. 1982), cert. den.,459 U.S. 822 (1982); Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428
(1992), reh. denied, 1993; Streight v. Ragland, 280 Ark. 206,655 S.W.2d 459 (1983); City of Piggott v. Woodard, 261 Ark. 406,549 S.W.2d 278 (1977).
In reviewing the constitutionality of a provision that has been challenged on equal protection grounds, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of anactual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Reed v. Glover, 319 Ark. 16,889 S.W.2d 729 (1994); Howard v. City of Ft. Smith, 311 Ark. 505,845 S.W.2d 497 (1993); Arkansas Hospital Assoc. v. State Board of Pharmacy,297 Ark. 454, 763 S.W.2d 73 (1989).
It is entirely conceivable that the legislature, in requiring dispensers of in-office assembled hearing instruments, intended to assure the provision of materials that could be obtained readily in connection with other hearing instruments obtained from a manufacturer. Because it is possible to conceive of a rational basis for this differentiation, I must conclude that the differentiation does not create constitutional problems.
Question 3 — Regarding Section 3(a)(4), is the language pertaining to"in-office assembler" constitutional?
For the reasons stated in response to Question 2, it is my opinion that the reference in Section 3 of Act 592 of 1999 (quoted above), which amends A.C.A. § 17-84-104(a)(4), to "in-office assembler" does not give rise to constitutional concerns.
Question 4 — Regarding Section 3(b), why is giving an instruction bookletrequired only for "in-office" assembled hearing instruments and not forall instruments?
The section to which this question refers is the amended version of A.C.A. § 17-84-104(b), quoted and discussed in response to Question 2. I am unable to opine definitively as to the reason for this requirement. The General Assembly did not state its underlying reason for creating this requirement in Act 592. As noted in response to Question 2, however, a possible explanation for the requirement is that the legislature included it for the purpose of assuring the provision of materials that could be obtained readily in connection with other hearing instruments obtained from a manufacturer. This is merely conjecture, however.
Question 5 — Regarding Section 9(3), is it constitutional to requirelicense holders seeking renewal of their license to state that they areengaged in the practice of dispensing "in-office' assembled hearinginstruments?
The section to which this question refers is A.C.A. § 17-84-306(d), as amended by Act 592. That section states:
 The board shall require that all new applicants and all applicants seeking renewal of their license shall state whether they are engaged in the practice of dispensing in-office assembled hearing instruments.
A.C.A. § 17-84-306(d)(3), as amended by Act 592 of 1999.
I find no constitutional problems with this section. It is reasonable to expect the board to be fully apprised of the nature of the practice of all persons whom the board regulates.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] Your correspondence actually refers to "Act 5 of 1999." However, it is clear from the act title that you quote, and from your questions that you are actually referring to Act 592 of 1999.