The Honorable Sue Madison State Representative 573 Rockcliff Road Fayetteville, AR 72701-3809
Dear Representative Madison:
You have requested an Attorney General opinion concerning the voting procedures of a quorum court.
You have described a situation in which a quorum court member is employed by an agency that has a contract with the county for the provision of certain human services. (You state that proper procedures were followed to allow the county to contract with the quorum court member's agency.) This member is disqualified from voting on the portion of the county budget dealing with this agency because of her employment with this agency. Rather than allow the various agency budgets to be voted on separately, the quorum court decided to vote on the human services budget as a whole. Because the quorum court refused to allow this member's agency to be voted on separately, she was unable to vote on the remainder of the human services budget.
With regard to this scenario, you have asked:
 Did the quorum court's refusal to hold a separate vote on the quorum court member's agency amount to disfranchisement of that member or of the electors in her district? Was this action otherwise unconstitutional or unlawful?
It is my opinion that although the quorum court's refusal to hold a separate vote on the quorum court member's agency does have the effect of depriving her constituents of representation on certain matters, the refusal to hold a separate vote was not unlawful unless the quorum court had no rational basis for its action.
As an initial matter, I note that the questions you have raised are not squarely addressed by statute. Nevertheless, it is clear that the situation you have described is one in which a common law conflict of interest is present. This common law principle is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
67 C.J.S. Officers § 204. See also Ops. Att'y Gen. Nos. 98-275; 94-283; 94-446, citing Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719
(1940); Madden v. United States Associates, 40 Ark. App. 143,844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R.,307 Ark. 363, 821 S.W.2d 7
(1991); and 63A Am. Jur. 2d Public Officers and Employees § 321.
This common law prohibition against conflicts of interest is also reflected in the provisions of certain Arkansas statutes that are pertinent to this situation (but that do not squarely address it). First, A.C.A. § 14-14-1202(a) states in pertinent part:
 (a) PUBLIC TRUST. The holding of public office or employment is a public trust created by the confidence which the electorate reposes in the integrity of officers and employees of county government. An officer or employee shall carry out all duties assigned by law for the benefit of the people of the county. The officer or employee may not use his office, the influence created by his official position, or information gained by virtue of his position to advance his individual personal economic interest or that of an immediate member of his family or an associate, other than advancing strictly incidental benefits as may accrue to any of them from the enactment or administration of law affecting the public generally.
A.C.A. § 14-14-1202(a).
Similarly, A.C.A. § 21-8-304 provides in pertinent part:
 (a) No public official shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship that is not available to others except as may be otherwise provided by law.
A.C.A. § 21-8-304.
Finally, A.C.A. § 14-14-1202(c)(1)(A) provides:
 (c)(1) RULES OF CONDUCT. No officer or employee of county government shall:
 (A) Be interested, either directly or indirectly, in any contract or transaction made, authorized, or entered into on behalf of the county or an entity created by the county, or accept or receive any property, money, or other valuable thing, for his use or benefit on account of, connected with, or growing out of any contract or transaction of a county.
A.C.A. § 14-14-1202(c)(1)(A).
The above-quoted policy statements concerning conflicts of interest make clear that in situations where a common law conflict of interest is present, it is appropriate for the affected public servant to abstain from participating in any decision-making procedure that would impact upon his or her personal interests. It is also clear from these policy statements that the public servant in question should abstain from participating even in decisions that would impact upon him or her indirectly.[1]
Therefore, if, as a factual matter, decisions about the entire human services budget in the situation you have described could be deemed to impact upon the quorum court member in question — even indirectly — it would be appropriate for the quorum court member to abstain from participating in such decisions. If this is the case, it would not be unlawful for the quorum court to refuse to hold a separate vote on this member's agency so as to allow her to vote on the other aspects of the human services budget.
This is not to say that it would be unlawful ipso facto for the quorum court to block the member from voting on the entire human services budget if decisions about the other portions of the budget did not affect that quorum court member, even indirectly. In that situation, it would only be unlawful for the quorum court to block her participation in these decisions if it had no rational basis for doing so. The concern about such a situation arises out of the Equal Protection Clause of the 14th
Amendment to the United States Constitution, because it would discriminate against a discrete class (the quorum court member's constituents) by depriving them of representation on certain matters. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary. That is, the disparity must be shown to have no rational basis — no rational relation to a legitimate end. Vacco v. Quill, 521 U.S. 793
(1997); Romer v. Evans, 517 U.S. 620, 631 (1996); Clements v. Fashing,457 U.S. 957 (1982); Craft v. City of Fort Smith, 335 Ark. 417,984 S.W.2d 22 (1998); Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428
(1992), reh. denied, 1993; McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989); Streight v. Ragland, 280 Ark. 206,655 S.W.2d 459 (1983); City of Piggott v. Woodard, 261 Ark. 406,549 S.W.2d 278 (1977).
In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Ester v. National HomeCtrs., Inc., 335 Ark. 356, 981 S.W.2d 91(1998); Reed v. Glover,319 Ark. 16, 889 S.W.2d 729 (1994); Arkansas Hospital Assoc. v. State Boardof Pharmacy, 297 Ark. 454, 763 S.W.2d 73
(1989).
The classification created by the quorum court in the situation you have described does not affect a suspect class or a fundamental right. It must therefore be analyzed using the rational basis standard.
It is conceivable that the quorum court has chosen to vote on the entire human services budget because it would be unduly burdensome to hold separate votes on every item of that budget. Such a basis for the quorum court's manner of voting would be "rational."
Because it is possible to conceive of a rational basis for the quorum court's refusal to hold a separate vote on the quorum court member's agency, I must conclude that under the equal protection standards that are applicable to such action, this situation does not present constitutional problems.
It should be noted that regardless of whether there exists an appropriate basis for blocking the quorum court member from participating in decisions about the entire human services budget, it is still true that her abstention from participation in such decisions does have the effect of depriving her constituents of representation in these decisions. The electors' remedy for this situation is to elect a person who would not have this conflict of interest.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] It should be noted that some decisions can impact a quorum court member so indirectly that abstention from voting is not necessary. See,e.g., Op. Att'y Gen. No. 95-099 (holding that a quorum court member whose family member works for the fire department may vote on matters affecting the fire department); Op. Att'y Gen. No. 86-639 (holding that a quorum court member need not abstain from voting on the county budget even though the budget contained the salary of his son, who worked for the Sheriff).