William Pettis, President Arkansas State Board of Acupuncture and Related Techniques 239 Hobson Avenue Hot Springs, AR 71913
Dear Mr. Pettis:
I am writing in response to your request for my opinion on the following questions relating to Senate Bill 115, as engrossed on February 4, 6 and 11, 2003, which proposes to restructure the Arkansas State Board of Acupuncture and Related Techniques:
 1. Is it legal and/or constitutional for a private organization to be given control of a state board by legislative mandate?
 2. Is it legal/constitutional to require (professional) Board members to have additional training in order to serve on the Board?
 3. Is it legal, or vague, to allow the Board to choose its own requirements to qualify for Board membership?
 4. Does the added section, 17-102-207, require presently licensed practitioners to have their licenses re-issued by the new Board?
 5. Does allowing the Board to "provide the Secretary of State with a specific set of criteria for granting, denying, and renewing each of the types of licenses" conflict with the non-amended Section 17-102-304
which sets standards for licensing?
6. Does the amended language in Section 17-102-302:
 (a) Allow people to be licensed with lower standards than are required in Subsection 304 (i.e., an equal protection issue)?
 (b) Allow for an unlimited number of people to be licensed if they meet these criteria?
 (c) Is not the entire section moot as it originally required the grandfathering standards to be met "within two years of August 1, 1997"?
 7. Is there any other challengeable language contained in the amendment based on constitutionality, vagueness, equal protection or other issues?
RESPONSE
With respect to your first question, I do not believe it would be illegal or unconstitutional for the legislature to require that board members be selected from candidates recommended by the Arkansas Association on Oriental Medicine. With respect to your second question, I see nothing objectionable in requiring professional board members to have specialized training. With respect to your third question, I see nothing objectionable in the legislature vesting the board with the power to require its professional members to have passed an "exam approved by the Board." With respect to your fourth question, nothing in the proposed A.C.A. § 17-102-207 suggests that a currently licensed practitioner would need to renew his license prior to the expiration of the biennial term specified at A.C.A. § 17-102-307. Although I am not certain I follow your fifth question, I see no conflict between the standards for licensing set forth at A.C.A. § 17-102-304 and a provision requiring the board to advise the Secretary of State when he should grant, deny or renew a license. With respect to your sixth question: (a) I do not believe the proposed A.C.A. § 17-102-302 would offend the equal protection clause; (b) I believe the licensing criteria might in theory, but would not in practice, "[a]llow for an unlimited number of people to be licensed" and (c) I believe the only section of the proposed A.C.A. § 17-102-302 that might be described as "moot" is the one dealing with provisionally licensed practitioners, since the statute on its face requires the cancellation of all provisional licenses as of August 1, 1999.
Question 1: Is it legal and/or constitutional for a private organizationto be given control of a state board by legislative mandate?
Section 1 of S.B. 115 provides as follows:
 (a) The members of the Arkansas State Board of Acupuncture and Related Techniques serving on the day before the effective date of this act shall cease to be members of the board on the effective date of this act and their successors shall be appointed as provided in Arkansas Code § 17-102-201.
 (b) No person who was a member of the board on the day before the effective date of this act may be reappointed as a member of the board before January 1, 2005.
You specifically take issue with the following proposed amendment to A.C.A. § 17-102-201(a)(2), contained in Section 4 of the bill:
 (A) Five (5) full members of the board shall be doctors of Oriental medicine licensed in this state and shall:
 (i) Be appointed from a list of three (3) names per position provided by the Arkansas Association on Oriental Medicine.
Not being a finder of fact, I will simply assume you are correct in representing that the Arkansas Association on Oriental Medicine is a "private organization." In response to your question, I am unaware of any principle of statutory or constitutional law that would preclude the legislature from directing that board members be selected from a list of individuals recommended by what I assume is a professional organization uniquely qualified to recognize qualified candidates.
Question 2: Is it legal/constitutional to require (professional) Boardmembers to have additional training in order to serve on the Board?
You indicate that this question relates to proposed A.C.A. §17-102-201(a)(2)(A)(ii), contained in Section 4 of the bill, which requires that the five board members referenced in my response to your previous question do the following:
 Provide verifiable documentation of completion of an advanced specialty program, externship, residency, internship, or board certification in a recognized Oriental medical specialty and have completed in not more than two (2) years, a minimum of one hundred forty-four (144) hours of education that shall not include advanced training in acupuncture.
I am unaware of any statutory or constitutional proscription against imposing such requirements for service on the board.
Question 3: Is it legal, or vague, to allow the Board to choose its ownrequirements to qualify for Board membership?
You indicate that this question refers to Section 5 of S.B. 115, which proposes to amend A.C.A. § 17-102-202 to read as follows:
 (c) Each full professional member also shall be a graduate of a reputable school or institute of acupuncture and Oriental medicine and have passed either the National Commission for the Certification of Acupuncturists exam or another exam approved by the board.
In my opinion, no provision of statutory or constitutional law would proscribe the legislature from authorizing the board to require its "full professional members" to have passed whatever examination the board deems appropriate.
Question 4: Does the added section, 17-102-207, require presentlylicensed practitioners to have their licenses re-issued by the newBoard?
The proposed A.C.A. § 17-102-207(a), which is set forth in Section 10 of S.B. 115, provides: "The Secretary of State shall issue, deny and renew licenses under § 17-102-302 and 304." Section 17-102-304(d)(3) contains a provision requiring practitioners to renew their licenses biennially. Seealso A.C.A. § 17-102-307 (reciting the same renewal requirement). Nothing contained in the proposed A.C.A. § 17-102-207 suggests that currently licensed practitioners will need to renew their licenses before their biennial term expires.
Question 5: Does allowing the Board to "provide the Secretary of Statewith a specific set of criteria for granting, denying, and renewing eachof the types of licenses" conflict with the non-amended Section17-102-304 which sets standards for licensing?
Section 9 of S.B. 115 proposes adding the following provision to A.C.A. § 17-102-206:
 (d)(1) The board shall certify to the Secretary of State those applicants for licensure who have met all the criteria applicable to that applicant under either § 17-102-302 or 304.
Section 10 of the bill proposes adding the following provisions to the Arkansas Code:
17-102-207. Licenses issued — Secretary of State
 (a) The Secretary of State shall issue, deny and renew licenses under § 17-102-302 and 304.
 (b) The Arkansas State Board of Acupuncture and Related Techniques shall provide the Secretary of State with a set of specific criteria for granting, denying and renewing each of the types of licenses under § 17-102-302 and 304.
 (c) Before issuing a license, the Secretary of State shall verify that certification of an applicant by the board was approved by an affirmative vote of a majority of the full membership of the board, excluding the ex officio member.
 (d) The Secretary of State shall establish fees sufficient to cover the actual cost of granting, denying and renewing licenses under this chapter.
In my opinion, nothing in this proposed legislation conflicts with the unamended provisions of A.C.A. § 17-102-304, which sets forth the licensing requirements for an acupuncturist. Read in context, I do not believe it would be appropriate to interpret subsection (b) of this proposed statute as investing the Secretary of State with anything more than ministerial duties in matters of licensure. In comparing S.B. 115 and A.C.A. § 17-102-304 in its current form, it is clear that the board now has and would retain ultimate discretion regarding professional standards and licensure.
Question 6: Does the amended language in Section 17-102-302:
 (a) Allow people to be licensed with lower standards than are required in Subsection 304 (i.e., an equal protection issue)?
 (b) Allow for an unlimited number of people to be licensed if they meet these criteria?
 (c) Is not the entire section moot as it originally required the grandfathering standards to be met "within two years of August 1, 1997"?
With respect to subsection (a) of your question, although the inquiry would ultimately be factual in nature, I consider it unlikely that a court would sustain any equal protection challenge to S.B. 115. The equal protection doctrine, which is set forth in U.S. Const. amend. 14 and Ark. Const. art. 2, §§ 2 and 3, prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end. Vacco v. Quill,521 U.S. 793 (1997); Romer v. Evans, 517 U.S. 620, 631 (1996); Clements v.Fashing, 457 U.S. 957 (1982); Craft v. City of Fort Smith, 335 Ark. 417,984 S.W.2d 22 (1998); Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428
(1992), reh. denied, 1993; McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989); Streight v. Ragland, 280 Ark. 206,655 S.W.2d 459 (1983); City of Piggott v. Woodard,261 Ark. 406, 549 S.W.2d 278
(1977). In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Esterv. National Home Ctrs., Inc., 335 Ark. 356, 981 S.W.2d 91 (1998); Reedv. Glover, 319 Ark. 16, 889 S.W.2d 729 (1994); Arkansas Hospital Assoc.v. State Board of Pharmacy, 297 Ark. 454, 763 S.W.2d 73
(1989).
In my opinion, a reviewing court would probably conclude that the legislation at issue passes this test. Section 17-102-302 of the Code provides (1) for the licensing without examination of acupuncturists certified by the National Commission for the Certification of Acupuncturists as of August 1, 1997; (2) for the licensing without examination of individuals who lived and practiced in this state and can demonstrate certain specified qualifications; (3) for the licensing without examination of individuals who are licensed in another state and can demonstrate certain specified qualifications; and (4) for the provisional licensing of uncertified resident, practicing acupuncturists as of December 31, 1996, subject to the condition that the acupuncturist become licensed within two years of August 1, 1997. Section 17-102-302 in both its current and proposed forms provides for restrictions on the scope of practice of provisionally licensed individuals based upon a thorough review of their qualifications. Section 17-102-304 of the Code sets forth the qualifications an applicant for certification must establish in order to be licensed, including attendance at an approved institute providing specified training in acupuncture.
I am unaware of what training one must complete to warrant licensure in other states or certification by the National Commission for the Certification of Acupuncturists. I consequently cannot formally opine whether the training required to obtain such credentials is commensurate with that itemized in A.C.A. § 17-102-304 as amended. However, I can opine that it appears eminently rational, given the need for qualified health care professionals, to extend recognition in the form of licensure to individuals who have undertaken a course of professional training that may differ in details but not in overall quality from that set forth in A.C.A. § 17-102-304. Moreover, with respect to uncertified acupuncturists residing and practicing in Arkansas, I am struck by the fact that A.C.A. § 17-102-302 strongly restricts the scope of practice of provisionally licensed individuals and provides for close monitoring of their activities. Given these restrictions, I believe this provision would probably pass constitutional muster. Finally, as you suggest in subsection (c) of your question, the relative qualifications of such individuals during the provisional phase of their licensure would appear to be moot, since under the statute all such provisional licenses would lapse on August 1, 1999 at the latest.
With respect to subsection (b) of your question, A.C.A. § 17-102-302 as amended in S.B. 115 would indeed in theory "[a]llow for an unlimited number of people to be licensed if they meet these criteria." However, the same might be said of the criteria to qualify for the practice of any profession. I believe market forces would ultimately apply to control the number of practitioners — just as they do, for instance, in the practice of medicine.
With respect to subsection (c) of your question, I do not believe A.C.A. § 17-102-302 is "moot" in its entirety "as it originally required the grandfathering standards to be met within `two years of August 1, 1997.'" As proposed in S.B. 115, the referenced "grandfathering" provision applies only to uncertified practitioners residing in Arkansas. Specifically, proposed A.C.A. § 17-102-302(c)(1)(a) would provide:
 Notwithstanding the requirements set forth in § 17-102-304, any acupuncturist not validly certified by the National Commission for the Certification of Acupuncturists as of August 1, 1997, but residing and practicing acupuncture in this state as of December 31, 1996, shall upon certification by the board to the Secretary of State be issued a provisional license by the Secretary of State conditioned upon the acupuncturist's becoming certified by the commission within two (2) years of August 1, 1997.
I agree that this particular subsection of the proposed statute is moot, since on its face it precludes the possibility of there being any provisionally licensed acupuncturists in Arkansas after August 1, 1999. However, this condition does not moot the remaining provisions of A.C.A. § 17-102-302.
Question 7: Is there any other challengeable language contained in theamendment based on constitutionality, vagueness, equal protection orother issues?
Not to my knowledge.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh