The Honorable Steve Higginbothom State Senator Post Office Box 242 Marianna, AR 72360-0242
Dear Senator Higginbothom:
I am writing in response to your request, tendered on behalf of the mayor of Forrest City, for my opinion on the following questions:
 1. If a city has a wellness program for its employees, is it legal to give them a special discounted membership?
 2. If the answer to question one is "yes," is it also legal for a city to give employees a special discount membership to the city multi-purpose and wellness center even if there is no city wellness program in place?
 RESPONSE
In my opinion, the answer to both of your questions is "yes." I believe either of the proposals set forth in your questions would fall well within the scope of a city's police powers and would not offend the equal protection doctrine. Question 1: If a city has a wellness programfor its employees, is it legal to give them a special discountedmembership?
In my opinion, the answer to this question is "yes."
My inquiries reveal that the referenced "special discounted membership" is to an existing city-owned wellness center that sells memberships to city residents. Your concern is apparently that it might be impermissible for a city to favor its employees by affording them a lower membership rate than that available to other members of the community.
A municipal corporations of the first class[1] is "authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs. . . ." A.C.A. § 14-43-602 (Repl. 1998). The Code defines the term "municipal affairs" as meaning "all matters and affairs of government germane to, affecting, or concerning the municipality or its government. . . ." A.C.A. § 14-43-601(a)(1) (Repl. 1998). However, the Code excepts from this definition various matters that it defines as being "state affairs," including "fringe benefits of employees." A.C.A. §14-43-601(a)(1)(G). Moreover, municipal corporations in Arkansas cannot pass any laws contrary to the general laws of the state. See Arkansas Const. Art. 12, §§ 3 and 4; and Nahlen v. Woods, 255 Ark. 974,504 S.W.2d 749 (1974). Nevertheless, a municipality may legislate regarding "state affairs" so long as the legislation is "not in conflict with state law." A.C.A. § 14-43-601(a)(2). In addition, despite the seemingly broad grant of authority in A.C.A. § 14-43-602 (adopted in 1971), the Arkansas Supreme Court has continued to hold that a city possesses only those powers that are expressly granted by the Constitution or the General Assembly, necessarily incident to the execution of those granted powers, or powers that are indispensable, and not merely convenient, to their objects and purposes. Cosgrove v. City of West Memphis, 327 Ark. 324,326, 938 S.W.2d 827 (1997); see also Op. Att'y Gen. 2004-046. Furthermore, substantial doubt as to the existence of a power in a municipal corporation must be resolved against it. Cosgrove, supra
(citing City of Little Rock v. Cash, 277 Ark. 494, 501, 644 S.W.2d 229
(1982)).
In my opinion, the statutory grant to cities of the authority to "exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs," A.C.A. § 14-43-602, is express and would warrant a city's extension of wellness benefits to its employees unless some provision of state law were to dictate otherwise. In the present case, I believe this qualification regarding conflicting state law in matters involving "state affairs" raises two questions: first, could the "discounted membership" referenced in your request be characterized as a "fringe benefit" of the sort identified as a "state affair" in A.C.A. § 14-43-601(a)(1)(G); and secondly, if so, would granting a "discounted membership" to a "wellness program" violate any state law relating to the granting of "fringe benefits"? In my opinion, the answer to the first of these questions is "yes" and the answer to the second of these questions is "no." I am unaware of any provision of state law that would preclude a municipal corporation from promoting public employee welfare, satisfaction and productivity by encouraging fitness and health through a wellness program funded in part by public revenues. As a general rule, to withstand scrutiny, an ordinance must come within the scope of powers granted cities and towns under the statutes promulgated in the proper exercise of police powers and must bear some reasonable relation to the public health, safety, morals, welfare, comfort, or convenience. Wilkins v. City of Harrison,218 Ark. 316, 236 S.W.2d 82 (1951). In my opinion, an ordinance promoting the health and welfare of public employees by subsidizing their participation in a wellness program would pass muster under this standard.
Your question further implicates what is commonly known as the equal protection doctrine, which is set forth in U.S. Const. amend. 14 and Ark. Const. art. 2, §§ 2 and 3. The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end. Vacco v. Quill, 521 U.S. 793 (1997);Romer v. Evans, 517 U.S. 620, 631 (1996); Clements v. Fashing,457 U.S. 957 (1982); Craft v. City of Fort Smith, 335 Ark. 417,984 S.W.2d 22 (1998); Medlock v. Leathers, 311 Ark. 175,842 S.W.2d 428 (1992), reh. denied, 1993;McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989); Streight v. Ragland, 280 Ark. 206, 655 S.W.2d 459
(1983); City of Piggott v. Woodard, 261 Ark. 406, 549 S.W.2d 278 (1977).
In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Williamson v. LeeOptical Co. 348 U.S. 483, 490 (1955); Ester v. National Home Ctrs.,Inc., 335 Ark. 356, 981 S.W.2d 91(1998); Reed v. Glover, 319 Ark. 16,889 S.W.2d 729 (1994); Arkansas Hospital Assoc. v. State Board ofPharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989). Applying this standard in the present case, I believe that the rational and legitimate goals of encouraging public employment and promoting the health of public employees would justify a city's distinguishing between public employees and the general public by affording the former cheaper access to a public wellness center. Accordingly, I believe that the proposed classification would readily pass muster under the extremely liberal rational-basis test set forth above.
Question 2: If the answer to question one is "yes," is it also legalfor a city to give employees a special discount membership to the citymulti-purpose and wellness center even if there is no city wellnessprogram in place?
In my opinion, the analysis set forth in my response to your first question would apply irrespective of whether a city has a formal wellness program in place. In either event, I believe a city could legally afford its employees more favorable terms of membership to a wellness center than it does other citizens.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] The City of Forrest City falls within this category.