The Honorable Buddy Lovell State Representative
201 West Riverside Drive Marked Tree, Arkansas 72365-2014
Dear Representative Lovell:
I am writing in response to your request for my opinion on the following question:
 Is it legal for the St. Francis Levee District to require that its elected directors own 40 acres of land at least one year past/before an election?
RESPONSE
In my opinion, the answer to this question is "yes." I believeAct 117 of 1917, which imposed this ownership requirement in the St. Francis Levee District, remains controlling law and would withstand any constitutional challenge alleging that the legislation violated the proscription against local or special legislation or the equal protection doctrine.
DISCUSSION
Your question concerns the application of the following legislative provision:
 Any person shall be elegible [sic] to be elected and to serve as a director of the St. Francis Levee district, who at the time of the election and for at least one year past before such election shall be and shall have been the owner of not less than forty acres of land within the said district and subject to its levee tax, and within the county for which he is a candidate, and who at the time of such *Page 2 
election is a citizen and resident of the county for which he is a candidate.[1]
At issue is whether it is permissible to condition a candidate's eligibility for office upon his owning a specified amount of property within the district. Answering this question might initially be addressed purely in terms of legislative history and further in terms of constitutional law.
With respect to the question of legislative history, the legislation just quoted was enacted pursuant to Act 117 of 1917. This legislation should be compared with the following language fromAct 78 of 1879, [2] which deals generally with levee-district elections:
 The election shall be held in accordance with the general election laws of the state, except that none but landowners of the district and mortgagees in possession after condition broken shall . . . be eligible to either of the offices. . . .[3]
A tension might be seen to exist between these two acts in that Act 78 generally provides that in order to serve as a levee-district director, one need only own land in the district, whereas Act 117 requires that a candidate for director in the St. Francis Levee District own at least 40 acres of land within the district and within the county for which he is a candidate. Unlike in other districts, Act 117 thus precludes a property owner in the St. Francis Levee District from serving as a director unless he owns a quite substantial tract of property within the district.
Various principles of statutory construction come into play in determining whether the specific acreage requirement set forth in Act 117 can be reconciled with the general provisions of Act 78. First, the cardinal rule is to give full effect to the will of the legislature.[4] A statute is construed just as it reads, giving the words *Page 3 
their ordinary and usually accepted meaning in common language.[5]
Nothing is taken as intended that is not clearly expressed.[6] In addition, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible.[7] Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together."[8] When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other.[9] Moreover, a general statute normally does not apply where there is a specific statute governing a particular subject matter.[10] Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act.[11]
Applying these principles, in my opinion, the legislature clearly intended that levee-district directors generally own property within the district.[12] I do not believe that this general requirement is irreconcilably at odds with the particular requirement that a St. Francis Levee District director own at least 40 acres of *Page 4 
property within the district and the county he represents, given that the enhanced ownership requirement might be read as a particular variation on an ownership requirement that still applies across the board.[13] Moreover, even if the two acts were read as irreconcilably in conflict, the act dealing with the St. Francis Levee District is both more specific and was enacted later in time than the general act, meaning that the 40-acre ownership requirement should apply if it were deemed to conflict with the general legislation.[14] Finally, I consider it immaterial that the St. Francis Levee District legislation was never codified. An act properly passed by the legislature will have legal effect regardless of whether it is codified.[15]
Your question as to whether the 40-acre ownership requirement is "legal" might further bear addressing from a constitutional perspective. At issue, it seems to me, are two questions: first, whether the 40-acre ownership requirement set forth in Act 117, which applies exclusively to the St. Francis Levee District, might be considered "local" or "special" legislation in derogation of the Arkansas Constitution[16]; and, secondly, whether the selective ownership requirement might offend the equal protection clauses of the U.S. and Arkansas Constitutions.[17]
With respect to the first of these questions, I must note thatAct 117 of 1917, which imposed the 40-acre ownership requirement, predated the adoption in 1926 of Amendment 14, which prohibited "local" and "special" legislation. The Arkansas Supreme Court has expressly declared that legislation enacted prior to *Page 5 
the adoption of Amendment 14 remains valid and subject to repeal but not amendment.[18] It would appear, then, that the 40-acre ownership requirement set forth in Act 117, even if it might have been subject to legal challenge as impermissible local or special legislation had it been enacted after the adoption of Amendment 14, is subject to challenge on this basis only by the legislature, which under Amendment 14 has the option to repeal the legislation.[19]
However, as noted above, the 40-acre ownership requirement might be subject to challenge as violating the principle of equal protection. The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. Classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end.[20] In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification; they must further uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one.[21] *Page 6 
In the present case, the pertinent classification is between qualifying property owners who own more than 40 acres within the within the St. Francis Levee District and non-qualifying property owners who own fewer than 40 acres. At issue, then, is whether the legislature might have had any conceivable rational basis for allowing the owners of the greater acreage access to directorial control while denying such access to owners of lesser acreage. In my opinion, the answer to this question is "yes." The legislature may reasonably have determined that managerial control over this crucial levee district, which embraces multiple counties bordering the Mississippi River, would be most suitably located in individuals who have the strongest interest in assuring that the levees are adequately maintained — namely, individuals with substantial land interests within the district. Accordingly, I believe a reviewing court would uphold the classification in this case against an equal protection challenge.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Acts 1917, No. 117, § 9. This legislation has never been codified in the Arkansas Code.
[2] Acts 1879, No. 78, § 2.
[3] This legislation is currently codified in A.C.A. § 14-123-301(b) (Repl. 1998).
[4] Flowers v. Norris,347 Ark. 760, 765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens,337 Ark. 161, 987 S.W.2d 686 (1999)).
[5] Edwards v. State,347 Ark. 364, 64 S.W.3d 706 (2002).
[6] State ex rel. Sargent v. Lewis,335 Ark. 188, 979 S.W.2d 894 (1998).
[7] Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993);City of Fort Smith v. Tate,311 Ark. 405, 844 S.W.2d 356 (1993).
[8] Donoho v. Donoho,318 Ark. 637, 887 S.W.2d 290 (1994).
[9] Id.; Ward School Bus Mfg., Inc. v. Fowler,261 Ark. 100, 547 S.W.2d 394 (1977). As regards the question of repeal by implication, I should note that Act 117, § 19, which imposes the 40-acre ownership requirement, contains a so-called "general repealer" clause, which provides: "All laws and parts of laws in conflict herewith are hereby repealed. . . ." A general repealer of this nature does not expressly mention any provisions to be repealed. It has been held that such a "general repealer" can repeal conflicting laws, but the repeal is one "by implication."Shelton v. Fiser, 340 Ark. 89, 8 S.W.3d 557 (2000). Cases are legion in Arkansas for the proposition that repeals by implication are not favored and are never allowed except where there is such invincible repugnancy between the former and latter provisions that both cannot stand together. See Donoho,supra.
[10] Donoho, supra.
[11] Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993);Daniels v. City of Fort Smith,268 Ark. 157, 594 S.W.2d 238 (1980).
[12] Although it does not bear directly on your question, there is no further requirement that the director reside in the district. A.C.A. § 14-123-501(c) (Repl. 1998). See Op. Att'y Gen. No. 2003-324 (discussing the application of this statute).
[13] Accord, Op. Att'y Gen. No. 2003-324.
[14] Accord, id.
[15] See A.C.A. § 1-2-105 (Repl. 2008), which provides in pertinent part:
 The adoption of this Code shall not be construed to repeal any act or section or part of a section of an act in effect on December 31, 1987, and omitted from this Code, which:
 * * * (2) Relates to or applies to only one . . . district. . . .
[16] Ark. Const. amend. 14 ("The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.")
[17] U.S. Const. amend. 14 and Ark. Const. art. 2, §§ 2 and 3.
[18] Benton v. Thompson,187 Ark. 208, 211-12, 58 S.W.2d 924 (1933).
[19] See Op. Att'y Gen. No. 2006-125 ("[T]he applicable law in a given city may consist of an uncodified special or local act, adopted before such acts were prohibited.")
Having offered this opinion, I will note that the 40-acre ownership requirement might well withstand a challenge alleging that the act is impermissible local or special legislation even if such a challenge were available. The supreme court has repeatedly pronounced that legislation that has a purely local effect is constitutionally permissible so long as it "is not arbitrary and bears a reasonable relation to the purpose of the law." ArkansasHSC v. Regional Care Facilities, Inc.,351 Ark. 331, 339, 93 S.W.3d 672 (2002).
[20] Vacco v. Quill, 521 U.S. 793 (1997); Romer v.Evans, 517 U.S. 620, 631 (1996); Clements v. Fashing,457 U.S. 957 (1982); Craft v. City of Fort Smith,335 Ark. 417, 984 S.W.2d 22 (1998); Medlock v. Leathers,311 Ark. 175, 842 S.W.2d 428 (1992), reh. denied, 1993;McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989); Streight v. Ragland,280 Ark. 206, 655 S.W.2d 459 (1983); City of Piggott v.Woodard, 261 Ark. 406, 549 S.W.2d 278 (1977).
[21] Ester v. National Home Ctrs., Inc.,335 Ark. 356, 981 S.W.2d 91 (1998); Reed v. Glover,319 Ark. 16, 889 S.W.2d 729 (1994); Arkansas HospitalAssoc. v. State Board of Pharmacy,297 Ark. 454, 763 S.W.2d 73 (1989). *Page 1