David BOKKER d/b/a Bokker's Used Cars *v.* Odell HILL and
Roy Peterson d/b/a Peterson Glass Company

96-481                                              940 S.W.2d 852

Supreme Court of Arkansas
Opinion delivered March 24, 1997

*John D. Bridgforth, P.A.*, for appellant.

*Richard L. Proctor*, for appellee.

ROBERT L. BROWN, Justice. Appellant David Bokker d/b/a Bokker's Used Cars appeals a judgment in favor of appellee Roy Peterson d/b/a Peterson Glass Company relating to the priority between his vendor's lien on a motor vehicle and Peterson's mechanic's lien on the same vehicle. The issue concerns statutory interpretation and, specifically, the effect of Act 737 of 1991, now codified at Ark. Code Ann. § 27-14-903(c)(1) (Repl. 1994), on lien priorities. We agree with the trial judge that Bokker failed to satisfy the requirements of the applicable lien-priority statute (Ark. Code Ann. § 18-45-202(b) (1987)), and we affirm.

The facts in this case are really not in dispute. On May 18, 1994, Bokker entered into a retail installment contract in Wynne with Odell Hill for the sale of a 1986 Toyota Celica. Bokker agreed to finance the purchase price of the car. The agreed purchase price was $4,995, with $1,700 down and the balance ($3,295 plus other costs) payable in 18 monthly installments of $204.92 each. The certificate of title for the car, which was issued in Hill's name, showed Bokker as the first lienholder. On December 19, 1994, Peterson did repair work to the broken rear window of the Toyota Celica at a cost of $590.17.[1] Because there was no payment for the work done, Peterson stored the car on his business premises at a rate of $10 per day. On January 20, 1995, Hill made his last payment to Bokker on the car and later defaulted. The car remained on Peterson's business premises. Bokker demanded return of the car, but Peterson refused.

Bokker then filed suit against Hill and Peterson. He claimed damages against Hill for breach of contract in the amount of

---

[1] The judgment shows this amount to be $590.70.

$2,258.29 and for possession of the car so that it could be sold and the proceeds applied to his lien. He also sought $1,000 against Peterson for wrongful detention of the car. Peterson answered and asserted that Bokker's lien was inferior to his own mechanic's lien. He further asserted that the car should be sold with the proceeds going first to satisfy his mechanic's lien in the amount of $590.17 plus storage fees and next to satisfy Bokker's lien. In addition, Peterson filed a counterclaim against Bokker on the basis that he (Peterson) had a priority lien. Bokker answered the counterclaim and stated that his vendor's lien was superior. An agreed order was entered by the trial judge for the sale of the Toyota Celica with the proceeds to be paid into the registry of the court for distribution after the trial judge decided the priority of the two liens. However, the parties did not comply with this order.

A bench trial followed on the priority question. Bokker testified that he did not retain the certificate of title, because that would have been illegal under Arkansas law, but that he did show himself as first lienholder on the certificate and, thus, perfected his lien. He argued that this was sufficient to give him priority. Peterson testified that he had done the repair work on the car and stored it and that his mechanic's lien was superior. The trial judge ruled from the bench in favor of Peterson, and judgment was entered accordingly. The judge found that Peterson had a first lien on the car in the amount of $915 ($590.70 for window repair and $325 for storage) and that Bokker's vendor's lien in the amount of $2,962.01 was a subordinate and inferior lien.[2] The basis for the judgment was that Bokker had not retained title to the vehicle, as required by Ark. Code Ann. § 18-45-202(b) (1987).

■■ Bokker first contends on appeal that the trial judge erred when he construed the pertinent statutes to favor Peterson. We refer first to the statutes relating to mechanic's liens. Automobile repairmen are given an "absolute lien" on a vehicle for repairs and storage for which payment was not made. Ark. Code Ann.

---

[2] The judgment figure for the vendor's lien includes the balance of the purchase price plus prejudgment interest, costs, and attorney's fees. Also, it appears that the correct figure for the mechanic's lien should have been $915.70.

§ 18-45-201 (1987). The next statute in the Code, codified at Ark. Code Ann. § 18-45-202 (1987), sets out the priority of mechanic's liens vis-á-vis vendor liens:

> (b) The lien provided for in this subchapter shall be subject to the lien of a vendor of automobiles, trucks, tractors, and all other motor propelled conveyances *retaining title therein,* for any claim for balance of purchase money due thereon. (Emphasis ours.)

In 1991, Act 737 was enacted into law, which made retention-of-title notes to secure an interest in a vehicle a Class C misdemeanor. Ark. Code Ann. § 27-14-903 (Repl. 1994). Act 737 defined a title-retention note as:

> [A]ny instrument that grants the purchaser the right to possession and use of the vehicle, but withholds assignment of ownership on the existing certificate of title and its delivery to the purchaser, until full payment has been made by the purchaser, thereby thwarting the purchaser's ability to comply with subsection (b) of this section.

Ark. Code Ann. § 27-14-903(c)(1)(B) (Repl. 1994). By making retention of title a Class C misdemeanor, Act 737 was directly at odds with § 18-45-202(b), quoted above, which grants priority to a vendor only if the vendor keeps possession of the title.

▊ Bokker does not make the argument that Act 737 impliedly revoked the title-retention requirement of § 18-45-202. Rather, he argues that he perfected his vendor's lien by placing it on the certificate of title, which was delivered to Hill, and that, in essence, he did all that he could do under the law. We are confronted, nonetheless, with a priority-of-lien statute — § 18-45-202(b) — which plainly requires a vendor to keep the certificate of title in his possession in order to preserve priority over a mechanic's lien. Admittedly, were Bokker to have done that, he would have been in violation of Act 737. Thus, § 18-45-202(b) has essentially been nullified as a statutory basis for establishing the superiority of a vendor's lien.

▊ Nevertheless, Bokker urges us to give his vendor's lien priority. But for us to hold that a vendor had priority over a mechanic without clear statutory authority establishing the bench-

mark for that priority would amount to judicial legislation. We have been loath to engage in judicial legislation in the past and decline to do so in the instant case. *See, e.g., Sebastian County Chapter of the Am. Red Cross v. Weatherford,* 311 Ark. 656, 846 S.W.2d 641 (1993); *Trout Brothers, Inc. v. Emison,* 311 Ark. 27, 841 S.W.2d 604 (1992); *Pickens-Bond Construction Co. v. Case,* 266 Ark. 323, 584 S.W.2d 21 (1979); *Vault v. Adkisson,* 254 Ark. 75, 491 S.W.2d 609 (1973).

■ We are mindful of the fact that Act 737, in rendering title-retention notes illegal, also provides that it is not intended to limit the rights of a lienholder to perfect or record his security interest. Ark. Code Ann. § 27-14-903(d) (Repl. 1994). Perfection of a security interest, however, does not automatically equate to priority status over competing lienholders. The Uniform Commercial Code, for example, gives a mechanic's lien priority over a perfected security interest in goods unless a "statute expressly provides otherwise." Ark. Code Ann. § 4-9-310 (Repl. 1991). Here, the existing statute on point — § 18-45-202(b) — would give a vendor's lien priority only if the vendor retained title. But, again, we will not attempt to resolve this statutory quandary, and we conclude that this is a matter for the General Assembly to address and clarify. Hence, because there is no statutory authority giving Bokker's vendor's lien priority status over Peterson's mechanic's lien, we must affirm.

■ For his second point, Bokker claims that his judgment of $400 in attorney's fees and $190.85 in costs should be awarded jointly and severally against Hill and Peterson, rather than solely against Hill. We disagree. In reviewing the record of this matter, we find no reference to the issue of joint and several liability being raised to the trial judge. Accordingly, the issue is not preserved for our review. *Douthitt v. Douthitt,* 326 Ark. 372, 930 S.W.2d 371 (1996); *Betts v. Betts,* 326 Ark. 544, 932 S.W.2d 336 (1996).

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. Section 18-45-202(b) (1987) provides that the lien of a dealer/vendor, retaining title for

an automobile, is superior to a repairmen's lien. Act 737 of 1991 was later enacted prohibiting a vendor or dealer selling cars from using title-retention notes. The question arises in this case whether, by its passage of Act 737, the General Assembly intended to affect a dealer's or vendor's lien rights established in § 18-45-202. The answer is no.

In paragraph (d) of Act 737, the General Assembly provided the following:

> This section [Act] is *not intended to limit the rights of a lienholder to perfect or record his security interest in a motor vehicle* pursuant to the provisions of Ark. Code Ann. §§ 27-14-802 and -803. (Emphasis added.)

Section 27-14-801 provides that no conditional sale contract or lien is valid against an owner's (purchaser's) creditors acquiring a lien until other subchapter requirements are met. Subchapter § 27-14-802(a), in pertinent part, provides that a dealer/vendor must deposit with the State Motor Vehicle Office a copy of the instrument creating and evidencing a lien with the last certificate of title issued for the vehicle. The Office then endorses the date and hour when the instruments are filed and issues a new certificate of title with the name of the new owner and statement of all liens. Section 27-14-806 then provides a vendor lienholder two options in recording his lien — the lien may be recorded on the manufacturer's statement of origin or on an existing certificate of title.

Here, Bokker Used Cars complied fully with the foregoing provisions when perfecting its lien. On May 18, 1994, Odell Hill purchased a Toyota by signing a retail installment contract giving a security interest to Bokker Used Cars. Upon Bokker filing the necessary documents with the State, Hill received his new certificate of title dated July 5, 1994, showing him as owner and Bokker's Used Cars as first lienholder. *See* attached certificate of title designated as "Plaintiff [Bokker's] Exhibit No. 2."

In conclusion, I am concerned that today's decision may have unintended adverse effects on existing liens perfected by Arkansas dealers and other persons selling cars. Obviously, the General

Assembly, in passing Act 737, never intended that dealers or vendors selling cars must still comply with the title-retention language in § 18-45-202(b) before they can perfect their lien. Such an interpretation of these provisions would be absurd and would require such vendors to violate the 1991 law against using title-retention instruments.

The General Assembly made it perfectly clear in Act 737 that all it intended was to prohibit dealers from retaining title to a sold vehicle until the purchaser paid the note or contract in full. In doing so, it specifically stated it did not intend to limit a dealer's/lienholder's rights to perfect its security interest.

In Act 737, the General Assembly provided that all laws and parts of laws in conflict with the Act are repealed. That is precisely what occurred here — the "retaining title" phrase in § 18-45-202(b) is in conflict with Act 737 and in particular with paragraph (d) of that Act. In short, Bokker's Used Cars complied with Arkansas's existing vendor-lien laws, and Bokker's lien rights should be enforced. The majority court's interpretation of those provisions to the contrary is seriously flawed, and most likely will prove to have a ripple effect on other vendor's who have appropriately followed the same lien procedures Bokker's Used Cars did in this cause.