The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, AR 71661-8367
Dear Senator Bradford:
I am writing in response to your request for my opinion on the following questions:
 1. Does A.C.A. § 18-45-202(b) violate the equal protection clause of the United States Constitution in that it gives preference to car dealers and financial institutions who have liens on automobiles over all other lien holders whose liens are inferior to the mechanics liens and other services as set out in A.C.A. § 18-45-201?
 2. Also, is A.C.A. § 18-45-202(b) unconstitutional in that it denies mechanics and other service providers as set out in A.C.A. § 18-45-201
a lien that is superior to all other mortgage holders on property that work or services had been provided, but in all other situations service providers under Arkansas law are granted a lien for their work or services that is superior to all other creditors where possession of the object of their work is retained until paid?
RESPONSE: In my opinion, the answer to both of your questions is no.
DISCUSSION
The constitutional principle that controls in answering both of your questions is the doctrine of "equal protection," which is set forth not only in the Fourteenth Amendment to the United States Constitution (the direct focus of your first question) but also in article 2, §§ 2 and 3 of the Arkansas Constitution.
The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end. Vacco v. Quill,521 U.S. 793 (1997); Romer v. Evans, 517 U.S. 620, 631 (1996); Clementsv. Fashing, 457 U.S. 957 (1982); Craft v. City of Fort Smith,335 Ark. 417, 984 S.W.2d 22 (1998); Medlock v. Leathers, 311 Ark. 175,842 S.W.2d 428 (1992), reh. denied, 1993; McCambridge v. City of LittleRock, 298 Ark. 219, 766 S.W.2d 909 (1989); Streight v. Ragland,280 Ark. 206, 655 S.W.2d 459 (1983);City of Piggott v. Woodard, 261 Ark. 406,549 S.W.2d 278 (1977).
In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Ester v. NationalHome Ctrs., Inc., 335 Ark. 356, 981 S.W.2d 91(1998); Reed v. Glover,319 Ark. 16, 889 S.W.2d 729 (1994); Arkansas Hospital Assoc. v. State Boardof Pharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989).
You have asked me to apply this rational-basis standard to the following statutes, which do not affect a suspect class or a fundamental right. Section 18-45-201 of the Arkansas Code provides:
 All blacksmiths, horseshoers, wheelwrights, automobile repairmen,
airplane repairmen, machine shops, farm implement repairmen, automotive storagemen, firms, and corporations who perform, or have performed, work or labor for any person, firm, or corporation; who have furnished any materials or parts for the repair of any vehicle or farm implement, including tires and all other motor accessories and bodies for automobiles, trucks, tractors, airplanes, and all other motor propelling conveyances; or who store on their premises any automobile,
truck, tractor, airplane, or other automotive vehicle, if unpaid, shall have an absolute lien upon the product or object of their labor, repair, or storage and upon all wagons, carriages, automobiles, trucks, tractors, airplanes, farm implements, and other articles repaired or stored and all horses or other animals shod by them, for the sums of money due for their work, labor, storage, and for materials furnished by them and used in the product, the shoeing and repairing, including the furnishing of tires and all other accessories and bodies for automobiles, trucks, tractors, airplanes, and all other motor-propelled vehicles.
(Emphasis added.) Section 18-45-202 (Supp. 1999) of the Code, captioned "Priority of lien," further provides:
 (a) The lien provided for in this subchapter shall take precedence over, and be superior to, any mortgage or other obligation attaching against the property in all cases where the holder of the mortgage or other obligation shall permit the property to remain in the possession of and be used by the person owing and bound for the amount thereof.
 (b) The lien provided for in this subchapter shall be subject to the perfected lien of a financial institution or vendor of automobiles, trucks, tractors, and all other motor-propelled conveyances for any claim for balance of purchase money due thereon.
 (c) The lien shall not take precedence over a bona fide purchaser for value of any automobile, truck, tractor, and other motor-propelled conveyances without either actual or constructive notice.
(Emphasis added.) The highlighted subsection (b), which has occasioned your request, was amended by Act 695 of 1999 to provide that a perfected lien held by a financial institution or vendor to cover the purchase price of a vehicle will take priority over the lien of a repairman for labor and parts expended on a vehicle.[1]
Question 1: Does A.C.A. § 18-45-202(b) violate the equal protectionclause of the United States Constitution in that it gives preference tocar dealers and financial institutions who have liens on automobiles overall other lien holders whose liens are inferior to the mechanics liensand other services as set out in A.C.A. § 18-45-201?
As stated, your question is whether it is constitutionally permissible to favor financial institutions and vendors holding liens on automobiles over lienholders whose liens are subordinate to repairmen's liens. However, the underlying issue appears to be whether the statute offends constitutional principles in directing that, if perfected, the lien held by the issuer of a purchase-money loan on a vehicle takes priority over repairmen's liens. Before addressing this question, I should stress that, in terms of decreasing priority, there are actually three classes of liens: (1) the perfected liens of financial institutions and vendors that have issued purchase-money loans; (2) repairmen's liens; and (3) all other liens on the vehicles. To the extent that you seek to group (1) and (3) together into one category, you appear to be begging the constitutional inquiry at the heart of your question, which is whether any rational basis exists to justify the distinction in priority between groups (1) and (2).
In my opinion, one can readily offer various rational bases for giving purchase-money lenders priority over all other categories of lienholders. For one thing, purchase-money liens necessarily attach first in time, making it perfectly rational, although not constitutionally necessary, that they be given priority.[2] Alternatively, the legislature might have wished to encourage lenders to finance increased sales of expensive durable goods. Finally, the legislature may have been motivated solely by the rationale for the amendment set forth in the emergency clause of Act 695, which I have no constitutional basis to second-guess:
 It is hereby found and determined . . . that current laws regarding . . . liens of vehicle repairmen are vague and indefinite in certain applications; that the vagueness of those laws results in disagreement and litigation; [and] that this act is designed to clarify such laws and should be given effect immediately to avoid further confusion and disagreement.[3]
Accordingly, in my opinion the statute clearly passes constitutional muster in distinguishing among the three categories of lienholder discussed above.
Question 2: Also, is A.C.A. § 18-45-202(b) unconstitutional in that itdenies mechanics and other service providers as set out in A.C.A. §18-45-201 a lien that is superior to all other mortgage holders onproperty that work or services had been provided, but in all othersituations service providers under Arkansas law are granted a lien fortheir work or services that is superior to all other creditors wherepossession of the object of their work is retained until paid?
Before addressing your question, I should note that it appears to be based upon misconceptions regarding both the scope of A.C.A. §18-45-202(b) and the priority of other types of liens attaching to property retained by the debtor. As discussed above, A.C.A. § 18-45-202(b) does not subordinate the liens of all service providers itemized in A.C.A. § 18-45-201; rather, it subordinates only the liens of repairmen who work on motorized vehicles subject to a lender's perfected purchase-money security interest. The other varieties of repairmen and artisans listed in A.C.A. § 18-45-201 are unaffected by the provisions of A.C.A. § 18-45-202(b). Moreover, it is not the case that lien priority is automatically assigned to "all other creditors where possession of the object of their work is retained until paid." For instance, A.C.A. §18-44-110(b)(1) subordinates mechanics' and materialmen's liens to liens arising from construction loans. Similarly, A.C.A. § 18-43-102(a) subordinates laborers' liens to "prior liens and landlord's liens for rent and supplies."
But even accepting for the sake of argument the validity of the premises underlying your request, I do not think the statute can be characterized as constitutionally suspect. To paraphrase your question: Is there a conceivable rational basis for subordinating the liens of repairmen who work on motorized vehicles to the perfected liens of purchase-money lenders when repairmen in other industries enjoy an absolute lien priority? In my opinion, the answer to this question is yes. For any of a variety of reasons, none of which need be factually tested, the legislature may have decided to stimulate lending in the automotive industry. This decision would reflect a facially plausible conclusion that because of economic conditions, lenders in the automotive industry need an added incentive to extend credit. Nothing in the constitution prohibits this kind of classification.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] Prior to the amendment, subsection (b) read as follows: "The lien provided for in this subchapter shall be subject to the lien of a vendor of automobiles, trucks, tractors, and all other motor-propelled conveyances retaining title therein, for any claim for balance of purchase money due thereon."
[2] Because the purchase-money liens must be perfected to take priority, no repairman can complain that he undertook repairs on a vehicle without at least constructive notice that the vehicle was previously encumbered. Given this knowledge, a repairman undertaking work on an encumbered vehicle can always condition his employment on receiving payment in advance.
[3] Although it is unnecessary rigorously to test the reasoning of the emergency clause in conducting a rational basis analysis, I will note in passing that the Code indeed seems to have been confusing in several respects before the amendment of A.C.A. § 18-45-202(b). Prior to its amendment, the statute subordinated repairmen's liens to the liens of automobile vendors who retained title to the sold vehicles. However, Act 737 of 1991 made it a Class C misdemeanor for a vendor to retain a purchaser's title, although the statute expressly (and inexplicably) declared it was not designed to impair the vendor's security interest in the vehicle. Act 737 clearly conflicted with A.C.A. § 18-45-202(b). See
discussion in Bokker v. Hill, 327 Ark. 742, 745, 940 S.W.2d 852 (1997). Also, whereas A.C.A. § 18-45-202(b) did not extend priority over repairmen's liens to the liens of financial institutions that issued purchase-money loans, several provisions of the Uniform Commercial Code conflict with this ranking of priorities. For instance, A.C.A. §4-9-301(2) provides as follows:
 If the secured party files with respect to a purchase money security interest before or within twenty-one (21) days after the debtor receives possession of the collateral, he takes priority over the rights of a . . . lien creditor which arise between the time the security interest attaches and the time of filing.
Similarly, A.C.A. § 4-9-312(4) provides:
 A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty-one (21) days thereafter.
These provisions suggest that the lien of a financial institution holding a perfected purchase-money security interest in a vehicle does have priority over a repairman's lien. The 1999 amendment of A.C.A. § 18-45-202(b) appears to have resolved these conflicts.